UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JEANIE PEREZ MASANGCAY,

*Plaintiff,*

-*v.*-

OKSANA KAMENETSKAYA and
BAHRUZ BALAYEV,

*Defendants.*

1:18-cv-03666 (BMC)

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
PURSUANT TO FRCP 12(B)(5) AND 12(B)(6)
BY DEFENDANTS OKSANA KAMENETSKAYA AND BAHRUZ BALAYEV**

**McLaughlin & Stern, LLP**
Steven J. Hyman, Esq.
Jonathan R. Jeremias, Esq.
260 Madison Avenue
New York, New York 10016
T. (212) 448-1100
F. (212) 448-0066
shyman@mclaughlinstern.com
jjeremias@mclaughlinstern.com

*Attorneys for Defendants
Oksana Kamenetskaya and
Bahruz Balayev*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... i

PRELIMINARY STATEMENT .................................................................................1

STATEMENT OF FACTS .........................................................................................2

      A.   Background ...................................................................................2

      B.   Service of Process .......................................................................4

ARGUMENT ..............................................................................................................6

   I.     DEFENDANTS WERE NOT PROPERLY SERVED WITH THE SUMMONS
        AND COMPLAINT PURSUANT TO FRCP 4(e) .................................6

   II.    PLAINTIFF FAILS TO STATE CLIAMS FOR VIOLATIONS OF
        THE TVPA ........................................................................................13

CONCLUSION........................................................................................................18

# **TABLE OF AUTHORITIES**

## **Cases**

*Aguirre v. Best Care Agency, Inc.*,
    961 F. Supp. 2d 427 (E.D.N.Y. 2013) ............................................................................ 15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................................ 13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................................ 13

*Chase Coll. Sch. Inc. v. Moniodes*,
    No. 600907/14, 2016 N.Y. Misc. LEXIS 5242
    (Sup.Ct. Nassau Cnty Aug. 4, 2016) ..................................................................... 10, 11, 12

*CSC Holdings, Inc. v. Fung*,
    349 F. Supp. 2d 613 (E.D.N.Y. 2004) .............................................................................. 7

*Cumberbatch v. Emstar Pizza, Inc.*,
    13-cv-7170, 2014 U.S. Dist. LEXIS 156119 (E.D.N.Y. Oct. 16, 2014) ................. 6, 7, 11

*DiFolco v. MSNBC Cable L.L.C.*,
    622 F.3d 104 (2d Cir. 2010) ............................................................................................. 2

*First Horizon Bank v. Mariarity-Gentile*,
    10-cv-289, 2013 U.S. Dist. LEXIS 23459 (E.D.N.Y. Feb. 20, 2013) ............................... 7

*Gallop v. Cheney*,
    642 F.3d 364 (2d Cir. 2011) ........................................................................................... 17

*George v. New York City Health & Hosps. Corp.*,
    09-CV-3833, 2012 U.S. Dist. LEXIS 44125 (E.D.N.Y. Mar. 23, 2012) ........................... 7

*GMA Accessories, Inc. v. BOP, LLC*,
    07-cv-3219, 2008 U.S. Dist. LEXIS 26120 (S.D.N.Y. Mar. 20, 2008) .......................... 10

*Headley v. Church of Scientology Int'l*,
    687 F.3d 1173 (9th Cir. 2012) ....................................................................................... 16

*Hongxia Wang v. Enlander*,
    17-cv-4932, 2018 U.S. Dist. LEXIS 37910 (S.D.N.Y. Mar. 6, 2018) ............................. 15

*In re IAC/InterActiveCorp. Sec. Litig.*,
    478 F. Supp. 2d 574 (S.D.N.Y. 2007) .............................................................................. 2

*In re Livent, Inc. Noteholders Sec. Litig.*,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001) ........................................................................... 13

*Jaffe and Asher v. Van Brunt*,
    158 F.R.D. 278 (S.D.N.Y. 1994) ........................................................................... 11, 12

*Krechmer v. Boulakh*,
    277 A.D.2d 288 (2d Dept. 2000) ........................................................................... 11, 12

*Main St. Assocs. v. Manko*,
    897 F. Supp. 1507 (S.D.N.Y. 1995) ...................................................................... 11, 12

*Nat'l Dev. Co. v. Triad Holding Corp.*,
    930 F.2d 253 (2d Cir. 1991) .......................................................... 7, 8, 10, 11, 12

*Old Republic Ins. Co. v. Pac. Fin. Srvcs. of Am., Inc.*,
    301 F.3d 54 (2d Cir. 2002) ........................................................................................ 7

*Paskar v. City of N.Y.*,
    3 F. Supp. 3d 129 (S.D.N.Y. 2014) .......................................................................... 2

*Perry v. NYSARC, Inc.*,
    424 F. App'x 23 (2d Cir. 2011) .............................................................................. 13

*Raschel v. Rish*,
    69 N.Y.2d 694 (N.Y. 1986) ..................................................................................... 7

*S. Bay Sailing Ctr., Inc. v. Std. Fire Ins. Co.*,
    15-cv-6183, 2017 U.S. Dist. LEXIS 7116 (E.D.N.Y. Jan. 17, 2017) ...................... 6

*United States v. Rivera*,
    799 F.3d 180 (2d Cir. 2015) ................................................................................... 15

*United States v. Shakney*,
    222 F.2d 475 (2d Cir. 1964) ................................................................................... 15

*Walia v. Veritas Healthcare Solutions, LLC*,
    13-cv-6935, 2015 U.S. Dist. LEXIS 10529 (S.D.N.Y. Aug. 11, 2015) .............. 15, 17

**Statutes**

18 U.S.C. § 1584, 1589, 1590 .......................................................................................... 13

18 U.S.C. § 1589(c)(2) ..................................................................................................... 15

**Rules**

Fed. R. Civ. P. 4(e)(1) ........................................................................................ 8

Fed. R. Civ. P. 4(e)(2)(B) ................................................................................... 8

Fed. R. Civ. P. 4(e) ............................................................................................. 7

Fed. R. Civ. P. 4(f) ............................................................................................. 7

N.Y. C.P.L.R. 308(2) (McKinney 2018) ........................................................... 8

**Other Authorities**

Black's Law Dictionary (10th ed. 2014) ............................................................ 8

## PRELIMINARY STATEMENT

As a threshold matter, Defendants Oksana Kamenetskaya and Bahruz Balayev ("Defendants") were never properly served with process, and the complaint should be dismissed pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(5). Plaintiff Jeanie Perez Masangcay ("Plaintiff"), who has been aware that Defendants were at all relevant times permanent residents of Qatar, and admits so in her complaint, caused Defendants to be served with process at an apartment in Forest Hills, New York, even though FRCP 4(f) provides a method for service upon individuals in a foreign country. Defendants do not live in Forest Hills and, as such, the place where service was made is neither their "domicile" nor their "usual place of abode," as those terms are used in FRCP 4(e) and New York Civil Practice Law and Rules ("CPLR") 308. Therefore, service of process was insufficient to confer personal jurisdiction over Defendants.

Plaintiff's forced labor and human-trafficking claims under the Trafficking Victims Protection Act ("TVPA") must also be dismissed, pursuant to FRCP 12(b)(6). Plaintiff claims that Defendants purportedly coerced her into employment while in the United States by threats of alleged deportation to the Philippines. However, that threat is meaningless and insufficient serious harm in the context of the balance of the inconsistent allegations in the complaint; *i.e.*, that Plaintiff had the means and opportunity to leave Defendants and return to Qatar to her brother. The allegations are also devoid of any other concrete facts of actual threats of physical, psychological or financial harm made knowingly by Defendants to coerce Plaintiff to continue her employment. As such, the conclusory and conflicting allegations fail to state a claim under the TVPA.

Because service of process was insufficient, the affidavits of service should be quashed or, in the alternative, a traverse hearing conducted. For the additional reasons set forth herein, Plaintiff's claims under the TVPA should also be dismissed.

1

## STATEMENT OF FACTS

### A. Background

At all relevant times, Defendants have been and remain residents of Qatar. *See* Compliant ("Cmplt.") at ¶ 11-13. Plaintiff arrived in Qatar in or about June 2015, with the assistance of her brother and his family who are residents of Qatar, for the purpose of finding work in Doha. *Id.* ¶ 10. In August 2015, Plaintiff applied to be employed as Defendants' "housemaid" and "caretaker" for the Defendants' then four-year-old child. *Id.* Plaintiff was advised that she would be employed for approximately one year and paid $500 per month. *Id.* at ¶ 13.  Plaintiff accepted the position, and Defendants secured a Qatar Work Residence Permit (or "residency card") for her, which, once issued by the Qatari government, was given to Plaintiff.  *See* Cmplt. ¶ 14.

Thereafter, in or about February or March 2016, Defendants informed Plaintiff that they would be traveling to the United States for vacation. *Id.* at ¶ 15. In preparation for their trip, Defendants assisted Plaintiff in obtaining a temporary employment/tourist visa (a "B-1/B-2 Visa"), which required certain information about her family members in the Philippines, Plaintiff's country of origin. *See id.* at ¶ 16; *see also* Declaration of Bahruz Balayev ("Balayev Decl.") at ¶ 11, Ex. E.[1] The DS-160 Application required Plaintiff to list her immediate relatives, including her parents and spouse Balayev Decl. ¶ 11, Ex. E.[2]  Because Plaintiff sought a work/tourist visa, by

---

[1] On this motion, the Court may consider the full text of statements or documents quoted in or incorporated by reference into the complaint and documents possessed by or known to Plaintiff on which he relied in bringing the action. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010), *In re IAC/InterActiveCorp. Sec. Litig.*, 478 F. Supp. 2d 574, 586-87 (S.D.N.Y. 2007).

[2] "Official government reports and other types of government records are appropriate for judicial notice." *Paskar v. City of N.Y.*, 3 F. Supp. 3d 129, 134 (S.D.N.Y. 2014). A sample DS-160 application can also be found at https://travel.state.gov/content/dam/visas/PDF-other/DS-160_Example.pdf

operation of law, she was also provided a pamphlet which explained her rights and U.S. human-trafficking laws.[3]

Plaintiff also entered into a written agreement with Defendants setting forth the terms of her pay and responsibilities to comport with U.S. labor laws while she performed services in the United States. Balayev Decl. Ex. F. As had become their practice in Qatar, Defendants also agreed to pay Plaintiff monthly. *Id.* at ¶ 12; *see also* Cmplt. ¶¶ 13, 17, 36. By her own admission, Plaintiff was "relieved" to be working in the United States under the terms of her employment agreement, which included an increase in the amount of pay she was to receive. Cmplt. ¶ 18.

Plaintiff and Defendants subsequently arrived in New York on June 26, 2016, at which time the parties traveled to Ms. Kamenetskaya's parents' apartment in Queens. Cmplt. ¶ 21. Two days later, Plaintiff accompanied Defendants to the vacation home that Defendants rented in Mount Pocono, Pennsylvania. *Id.* ¶ 22. During her stay in Pennsylvania, Plaintiff had full access to her cellular phone and was able to communicate freely through internet-based applications like Facebook Messenger and WhatsApp, because the rental property had a continuous Wi-Fi connection. *See* Cmplt. ¶ 28; Balayev Decl. ¶ 13.

The parties remained in Pennsylvania until July 27, 2016, when they returned to Ms. Kamenetskaya's parents' apartment in Queens, and then to another apartment rented by Defendants, also in Queens. *Id.* ¶¶ 32, 33. Upon their return to Queens, Defendants paid Plaintiff $2,010.50 for her services from June 26 to July 27, 2016, as provided for under the parties; employment agreement. Balayev Decl. ¶ 14, Ex. G.[4] On July 29th, Plaintiff left Defendants' employ by purportedly taking a cab to a nearby Queens mall. *Id.* ¶¶ 34, 35. All told, Plaintiff was

---

[3] U.S. Dept. of State, "Rights and Protections for Temporary Workers," *available at* https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/temporary-workers.html

[4] Plaintiff, however, never deposited the check. Balayev Decl. ¶ 14.

in New York for only five days, and the remainder of her time was spent in Pennsylvania. *See id.*
¶¶ 22, 32-35.

At all times while traveling to and within the United States, Plaintiff was in possession of
her passport, B-1/B-2 visa and return ticket to Qatar. Balayev Decl. ¶ 15, Ex. H. Plaintiff also
received $500 USD while in the United States, a portion of which she still had when she left
Defendants on July 29th, together with the check for $2,010.50 for her services in June and July.
*See* Cmplt. ¶ 36, *but see* Balayev Decl. ¶ 14, Ex. G.

### B.  Service of Process

Two years after she voluntarily left Defendant's employ, Plaintiff commenced this action
against Defendants for their failure to pay wages and overtime while she was employed in the
United States for approximately one month, and, *inter alia*, for purported violations of human-
trafficking laws. Cmplt. ¶¶ 1-2, 40-144. At all relevant times, Plaintiff knew that Defendants were
domiciled in Qatar, and admits so in her complaint. *Id.* ¶¶ 11-13. Notwithstanding Plaintiff's
knowledge of Defendants' residency in a foreign country, Plaintiff attempted to cause the
summons and complaint to be served upon Defendants at an apartment located at 67-35
Yellowstone Blvd, Apt 2A, Forest Hills, NY 11375 (hereinafter, the "Forest Hills Apartment").

Affidavits of service were prepared by a process server and filed on July 24, 2018. Dkt.
Nos. 51, 52. In these affidavits, the process server purports to have served Ms. Kamenetskaya with
the summons and complaint "personally" on July 14, 2018, and by leaving a copy for Mr. Balayev
with his purported wife at his "dwelling or usual place of abode." *See* Dkt Nos. 51 & 52. The
address listed on the affidavits of service as the Defendants' "dwelling or usual place of abode" is
the Forest Hills Apartment. *Id.*

However, Ms. Kamenetskaya was never served personally with the commencement papers. *See* Declaration of Oksana Kamenetskaya ("Kamenetskaya Decl.") at ¶¶ 7-8, Exs. B, C.  On July 14, 2018, the date the process server purportedly handed Ms. Kamenetskaya the commencement papers, she had traveled from Turkey to Azerbaijan, as evidenced by her travel itinerary and visas. *Id.*

In an effort to correct the error contained in the first affidavits of service, Plaintiff subsequently filed two additional affidavits of service on August 24, 2018. Dkt Nos. 63, 65. In these affidavits, the process server purports to have instead served Ms. Kamenetskaya and Mr. Balayev on July 14, 2018, by leaving a copy of the summons and complaint with "Jane Doe," the resident of the Forest Hills Apartment. *See id.* The process server also stated his "belief" that the Forest Hills Apartment is the "dwelling" of Defendants. *Id.*

However, neither Ms. Kamenetskaya nor Mr. Balayev live in the Forest Hills Apartment. Balayev Decl. ¶¶ 3-9; Kamenetskaya Decl. ¶¶ 2-6.  Although it is owned by Ms. Kamenetskaya and Mr. Balayev, the Forest Hills Apartment is home to Svetlana Kamenetskaya and Evgeniy Kamenetskiy—Ms. Kamenetskaya's parents—pursuant to a written lease agreement commencing July 28, 2016 through July 27, 2019. *See* Balayev Decl. ¶ 6, Ex. B; Kamenetskaya Decl. ¶ 5.[5] Neither of the Defendants maintains a room in the Forest Hills Apartment (it is a one bedroom apartment), nor do they keep any of their belongings there. Balayev Decl. ¶ 7; Kamenetskaya Decl. ¶ 6. In fact, since Defendants returned to Qatar in September 2016, they have not once been to the

---

[5] "Jane Doe," who the process server left the summons and complaint for Defendants, is Ms. Kamenetskaya's mother, whose primary language is Russian and who uses the assistance of hearing aids (Kamenetskaya Decl. ¶¶ 8-9), which explains the confusion in her responses to the process server's purported statements to her (*see* Dkt. Nos. 63, 65).

Forest Hills Apartment, and have no present intention to return to the Forest Hills Apartment. Balayev Decl. ¶¶ 4, 9; Kamenetskaya Decl. ¶¶ 3, 6.

## ARGUMENT

### I.   DEFENDANTS WERE NOT PROPERLY SERVED WITH THE SUMMONS AND COMPLAINT PURSUANT TO FRCP 4(e)

Service of process upon Defendants was not proper, as Ms. Kamenetskaya was not served "personally," and the summons and complaint were not left at Defendants' "dwelling or usual place of abode," as required pursuant to FRCP 4(e)(1) and (e)(2), thus depriving the Court of personal jurisdiction over the Defendants.[6]

Service of process is a required element of personal jurisdiction insofar as, to assert personal jurisdiction over a defendant, the procedural requirements of effective service of process must be satisfied. *See S. Bay Sailing Ctr., Inc. v. Std. Fire Ins. Co.*, 15-cv-6183, 2017 U.S. Dist. LEXIS 7116, at *19 (E.D.N.Y. Jan. 17, 2017). Although, "the core function of service is to supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections (*Cumberbatch v. Emstar Pizza, Inc.*, 13-cv-7170, 2014 U.S. Dist. LEXIS 156119, at * 8-9 (E.D.N.Y. Oct. 16, 2014)), the Second Circuit has "reject[ed] the notion that 'actual notice' suffices to cure a void service." *Nat'l*

---

[6] Defendants' counsel alerted Plaintiff's counsel that Ms. Kamenetskaya had not been served personally pursuant to FRCP 4(e)(2)(A), as stated on the face of the affidavit. *See* Dkt. No. 54. Soon thereafter, Plaintiff's counsel filed subsequent affidavits of service, which purported to have left the summons and complaint with "Jane Doe" at Defendants' "dwelling." Dkt. No. 63. It is not clear if Plaintiff asserts that service of process was effectuated under New York Civil Practice Law and Rules ("CPLR"), as permitted by FRCP 4(e)(1), upon Ms. Kamenetskaya, Mr. Balayev or both, even though counsel for Plaintiff indicated to this Court that service of process was made pursuant to FRCP 4(e)(1) *and* (e)(2). *See* Dkt. Nos. 55, 57. The distinction is important, though, because CPLR 308(2) requires that the summons and complaint be mailed to the individual *at their last known address*, and no such mailing was directed to Ms. Kamenetskaya according to either of the affidavits referring to service upon her and, in any event, the Forest Hills Apartment is not Defendants "last known address". *See* Dkt. Nos. 51, 63.

6

*Dev. Co. v. Triad Holding Corp.*, 930 F.2d 253, 256 (2d Cir. 1991); *Cumberbatch*, 2014 U.S. Dist. LEXIS 156119, at *11 (citing *Raschel v. Rish*, 69 N.Y.2d 694 (N.Y. 1986) ("When the requirements for service of process have not been met, it is irrelevant that the defendant may have actually received the documents."); *CSC Holdings, Inc. v. Fung*, 349 F. Supp. 2d 613, 616 (E.D.N.Y. 2004) (noting that "[t]he fact that the defendant received actual notice of the lawsuit when his father mailed him the summons and complaint made no difference to the holding" that service was invalid).

"When considering a challenge to personal jurisdiction or service of process, the burden is on the plaintiff to prove both the adequacy of service and that the court has personal jurisdiction over the defendant." *Id.* (quoting *First Horizon Bank v. Mariarity-Gentile*, 10-cv-289, 2013 U.S. Dist. LEXIS 23459 (E.D.N.Y. Feb. 20, 2013). "Where factual questions arise as to the propriety of service, a traverse hearing must be held to determine if service was, in fact, proper." *George v. New York City Health & Hosps. Corp.*, 09-CV-3833, 2012 U.S. Dist. LEXIS 44125, at *4 (E.D.N.Y. Mar. 23, 2012) (citing *Old Republic Ins. Co. v. Pac. Fin. Srvcs. of Am., Inc.*, 301 F.3d 54, 57-58 (2d Cir. 2002)). "[A] defendant's sworn denial of receipt of service . . . rebuts the presumption of proper service established by the process server's affidavit and necessitates an evidentiary hearing." *Id.* (citing *Old Republic*, 301 F.3d at 57).

FRCP 4(e) provides the methods of service of process upon an individual located within a judicial district of the United States; whereas, FRCP 4(f) provides the methods of service applicable to those individuals located in a foreign country. *See* FED. R. CIV. P. 4(e), 4(f). Neither of Defendants lived in or were located within the United States at or around the time service was attempted, and Plaintiff was aware of the fact that Defendants were permanently residing in Qatar. *See* Cmplt. ¶¶ 11-13. Notwithstanding Plaintiff's knowledge of these facts, she sought to effectuate

service upon Defendants at the Forest Hills Apartment pursuant to FRCP 4(e), rather than appropriately seek to effectuate service at Defendants' home in Qatar (*see* Dkt. Nos. 51, 52, 63 65).

> Service of process pursuant to FRCP 4(e) provides that service may be completed by:

>> following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>> …
>> leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there.

FED. R. CIV. P. 4(e)(1) and 4(e)(2)(B). New York's CPLR similarly provides that:

>> Personal service upon a natural person shall be made…by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by mailing the summons to the person to be served at his or her last known residence.

N.Y. C.P.L.R. 308(2) (McKinney 2018).

The precise definition of "dwelling" and "usual place of abode" has not been clearly defined by our courts and the Second Circuit has declined to "reconcile decades of conflicting authority" on the matter. *Nat'l Dev. Co.*, 930 F.2d at 257.[7]  The Second Circuit has, however, made clear that the inquiry is fact-specific, and that, while an individual can have more than one "dwelling" or "usual place of abode," for any one place to comport with the rule for service, there must be "sufficient indicia of permanence." *Id.* (acknowledging that "[s]ate courts construing state statutes containing similar language have arrived at this result where the defendant maintained one

---

[7] Black's Law Dictionary defines "abode" as "a home; a place of residence." *Abode*, BLACK'S LAW DICTIONARY (10th ed. 2014). "Residence" is defined as "[t]he place where one *actually* lives…." *Residence*, BLACK'S LAW DICTIONARY (10th ed. 2014) (emphasis added).

residence for certain days of the week or certain months of the year and another residence for the balance of his time.") (internal citations omitted).

Plaintiff concedes in her complaint that at all relevant times, Defendants were permanent residents of Qatar, and that their trip to the United States was for vacation and was temporary, limited to three months. Cmplt. ¶¶ 11-13, 15. Notwithstanding Plaintiff's own knowledge of where Defendants live and the inconvenience caused by summoning them to respond to egregious claims of violations of U.S. human-trafficking laws, which may also carry criminal penalties, Plaintiff insisted that the summons and complaint be served on Defendants at the Forest Hills Apartment where they have not, and do not live. *See* Dkt. Nos. 51, 52.

The first affidvits of service filed in this action claim that Ms. Kamenetskaya was served "personally." Dkt. No. 51. That is patently false. Ms. Kamenetskaya was traveling to Azerbaijan from Turkey with her children on July 14, 2018, the date personal service was first purported to be effectuated. Kamenetskaya Decl. ¶ 7, Exs. B, C; *cf.* Dkt. No. 51. Further, not only was Ms. Kamenetskaya not served personally, but the affidavit of service upon Mr. Balayev is also deficient in that the process server did not leave a copy of the summons and complaint with Ms. Kamenetskaya on that date, as stated in the affidavit of service, as, again, Ms. Kamentskaya was not at the Forest Hills Apartment on July 14, 2018. *Cf.* Dkt. No. 52.

Thereafter, Plaintiff filed two additional affidavits of service, seemingly as a means to correct the false statements contained in the first, which purport to have served Defendants by leaving copies of the summons and complaint with "Jane Doe" at her residence, the Forest Hills Apartment, which the process server believed was also the "dwelling" of Ms. Kamenetskaya and Mr. Balayev. Dkt. Nos. 63, 65. However, the Forest Hills Apartment is neither of the Defendants' "dwelling" or "usual place of abode." *See* Balayev Decl. ¶¶ 2-9, Exs. B, C. D; Kamenetskaya Decl.

9

¶¶ 2-6. Although Defendants' own the Forest Hills Apartment, they have prior to, at the time service was attempted, and continue to live in Qatar. *Id.* Defendants have no present intention to use the Forest Hills Apartment, especially since it is has been leased beginning in 2016 to other individuals. Balayev Decl. ¶¶ 6-9, Exs. B, C, D; Kamenetskaya Decl. ¶ 5. Moreover, the Defendants' neither maintain a room at the Forest Hills Apartment, nor any property or personal belongings there. Balayev Decl. ¶ 7; Kamenetskaya Decl. ¶ 6. In fact, Defendants have not stayed at the apartment since September 2016, and have no present intention to return to the apartment to use it even as a transient place of residence. Balayev Decl. ¶¶ 4, 9; Kamenetskaya Decl. ¶¶ 3, 6.

While it is true that an individual may have more than one dwelling or usual place of abode, the facts and circumstances here do not satisfy the requirement that the Forest Hills Apartment evidences a "sufficient indicia of permanence" for Defendants. *See Nat'l Dev. Co.*, 930 F.2d 257-258. Although Defendants own the Forest Hills Apartment, ownership alone is not a sufficient indicia of permanence such that it necessarily constitutes a "dwelling" or "usual place of abode" as a matter of law. *See GMA Accessories, Inc. v. BOP, LLC*, 07-cv-3219, 2008 U.S. Dist. LEXIS 26120, at *4-5 (S.D.N.Y. Mar. 20, 2008) (finding that merely because defendant's name was on a lease for an apartment he leased for his sister was insufficient evidence that the apartment was his "dwelling" or "place of abode," especially because he never lived there and instead lived in Buenos Aries, Argentina); *Chase Coll. Sch. Inc. v. Moniodes*, No. 600907/14, 2016 N.Y. Misc. LEXIS 5242, at *7 (Sup.Ct. Nassau Cnty Aug. 4, 2016) (concluding that "having an interest in a property does not necessarily mean that property is the dwelling place or usual place of abode of that owner).

Further, Plaintiff will argue that Defendants possess New York State drivers licenses with the Forest Hills Apartment listed as their address. *See* Dkt. No. 55. This argument, even coupled with the fact of their ownership of the apartment, is unavailing. Simply because the Forest Hills

Apartment is listed as the address on their drivers licenses is also not sufficient evidence that the Defendants actually live, or intend to live there at the time of service, and thus, insufficient to support a finding that the apartment is their "dwelling" or "usual place of abode." *Cumberbatch*, 2014 U.S. Dist. LEXIS 156119, at *10 ("Although [defendant's address] appears on his New York State drivers license, [p]laintiffs offered no evidence that he *actually* lives there.") (emphasis added).

In contrast to Defendants' mere ownership of the Forest Hills Apartment, courts have found that certain properties owned by individuals evidence sufficient indicia of permanence such that those properties are their "dwelling" or "usual place of abode," but only under circumstances where additional evidence exists that the individuals have maintained the property with the *intent* of using it, and have, in fact, used the property as a second home. *See e.g.*, *Nat'l Dev. Co.*, 930 F.2d at 257-258 (collecting cases); *Chase Coll. Sch.*, 2016 N.Y. Misc. LEXIS 5442,a t *5-6 (citing *Krechmer v. Boulakh*, 277 A.D.2d 288, 289 (2d Dept. 2000) (finding that service at a resident of Moscow's "vacation home" in New York satisfied the service requirements because he "sporadically stated at his New York home"); *Main St. Assocs. v. Manko*, 897 F. Supp. 1507 (S.D.N.Y. 1995) (finding that the defendant stayed at the apartment whenever he was in Manhattan, which he visited with considerable frequency, which was sufficient to establish it as his dwelling); *Jaffe and Asher v. Van Brunt*, 158 F.R.D. 278 (S.D.N.Y. 1994) (holding that the defendant's parent's home in New York was his dwelling, despite his residence in California, because he stayed at his parents' home whenever he was in New York and maintained a private bedroom, clothes and a phone line at that address).

In *Nat'l Dev. Co.*, the Second Circuit found significant that the plaintiff also "furnished the apartment and spent a considerable about of money remodeling it to fit *his* lifestyle," employed a

11

housekeeper for the apartment, and that he was actually living there on the day service was made. *Id.* at 258. Tellingly, though, the Second Circuit explicitly refused to opine on whether service of process under these circumstances would have been sufficient had the defendant not been at the residence at the time it was attempted. *Id.* Other decisions have likewise found a second home to be an individual's dwelling or usual place of abode based on the frequency with which they actually use the apartment, and its availability for use by the individuals upon whom service is to be effectuated. *See Chase Coll. Sch.*, 2016 N.Y. Misc. LEXIS 5442, at \*5-6 (citing *Krechmer v. Boulakh*, 277 A.D.2d 288, 289 (2d Dept. 2000). In those instances, the defendants had used their second property either as a vacation home, or had maintained a personal room in the dwelling and left personal affects there, which indicated an intent to return. *See Main St. Assocs. v. Manko*, 897 F. Supp. 1507 (S.D.N.Y. 1995); *Jaffe*, 158 F.R.D. 278 (S.D.N.Y. 1994).

Far from being a second home used by the Defendants with any degree of frequency, even sporadic use, Defendants have leased the Forest Hills Apartment to tenants for a term that commenced prior to, and extends beyond, the date on which Plaintiff attempted to effectuate service there. Balayev Decl. ¶ 6, Exs. B, C, D; Kamenetskaya Decl. ¶ 5. Unlike those instances where our courts found service to have been proper, neither of the Defendants maintain a room or personal belongings at the Forest Hills Apartment, and have not been to the apartment since September 2016, and have no intention to present return there. Balayev Decl. ¶¶ 4, 9; Kamenetskaya Decl. ¶¶ 3, 6.

Accordingly, the Forest Hills Apartment is not Defendants' "dwelling" or "usual place of abode" and service of process was ineffective. Therefore, the affidavits of service should be quashed or, in the alternative, the Court should conduct a traverse hearing to determine whether service at the Forest Hills Apartment was proper.

## II.      PLAINTIFF FAILS TO STATE CLAIMS FOR VIOLATIONS OF THE TVPA

Plaintiff's claims for violations of the TVPA are unsupported by any concrete, non-conclusory or uncontroverted factual allegations sufficient to withstand scrutiny on a motion to dismiss pursuant to FRCP 12(b)(6). Stated simply, Plaintiff attempts to fit within the elements of violations of the TVPA facts that, on their own, do not rise to such a level and are, therefore, insufficient to state a claim.

On a motion to dismiss, the pleading must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" and not merely "conceivable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). That is, the pleading must include more than an "unadorned, the-defendant-unlawfully-harmed-me accusation;" and mere legal conclusions, "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 556 U.S. at 678. Further, while the plaintiff's allegations are generally to be accepted as true on a motion to dismiss, "a court need not feel constrained to accept as true conflicting pleadings that make no sense, or that would render a claim incoherent." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001); *see also Perry v. NYSARC, Inc.*, 424 F. App'x 23, 25 (2d Cir. 2011) (a court may disregard "factual assertions that are contradicted by the complaint itself, by documents upon which the pleadings rely, or by facts of which the court may take judicial notice").

The TVPA was enacted to protect individuals from being knowingly coerced into performing labor or services for others, or to continue to perform labor or services for others, by acts or threats of "serious harm." *See generally*, 18 U.S.C. §§ 1584, 1589, 1590. The complaint presents a situation unlike those typically before our courts alleging violations under the TVPA,

in that Plaintiff does not allege that she was coerced to enter or stay in the United States by threat of serious harm, and instead agreed to accompany Defendants for a very limited time (which was intended to be three months) to perform the same duties she had for Defendants while in Qatar. Although Plaintiff alleges that the conditions of her employment in the United States were not of the quality she expected or had experienced in the months preceding her travel to the United States while working for Defendants in Qatar (*see* Cmplt. ¶ 23), the allegations, and the documentary evidence referred to in the complaint, simply do not rise to the level of the kind of serious harm that the TVPA seeks to protect. Plaintiff's only allegation of a so-called threat of harm is the vague and conclusory allegation that "[t]hroughout her employment by Defendants, Defendants regularly threatened to send Ms. Masangcay back to the Philippines." Cmplt. ¶ 30. This alleged threat, however, is meaningless in the context of Plaintiff's other allegations and to her claims that Defendants violated the TVPA.

Plaintiff does not allege that Defendants specifically threatened her with "deportation," nor does she delineate where and in what context the purported threats were made. Plaintiff also fails to allege that the purported threats were intended to coerce her to continue to work for Defendants.[8] Moreover, the threats are meaningless if made within the United States because Plaintiff knew that the threats were not real. That is, Plaintiff knew that she could not be sent back to the Philippines by Defendants but could, in fact, travel back to Qatar on her own, and had the means and opportunity to do so. As such, Plaintiff was not threatened with "serious harm" such that she would have felt compelled to continue to work for Defendants so as to avoid it.

---

[8] Plaintiff does not even allege that the purported threats were made to induce her to come to the United States, but that she chose to continue travel with Defendants there because she needed *a* job. *See* Cmplt. ¶ 15.

For purposes of a TVPR claim, "serious harm" is defined as "any harm, whether physical or non-physical, including psychological, financial or reputational harm, that is *sufficiently serious, under all the surrounding circumstances*, *to compel a reasonable person of the same background and in the same circumstances* to perform or to continue performing labor or services in order to avoid incurring that harm." 18 U.S.C. § 1589(c)(2) (emphasis added). To determine whether an employer's conduct was sufficiently serious to coerce a plaintiff to provide labor against her will, the court may "'consider the particular vulnerabilities of a person in the victim's position *but …* her acquiescence [must] be objectively reasonable under the circumstances,' taking into consideration whether 'a reasonable person of the same background and circumstances would have also felt coerced.'" *Hongxia Wang v. Enlander*, 17-cv-4932, 2018 U.S. Dist. LEXIS 37910, at *14 (S.D.N.Y. Mar. 6, 2018)(quoting *United States v. Rivera*, 799 F.3d 180, 186-87 (2d Cir. 2015)) (emphasis added).

Here, the pleadings fail to support a claim for violations of the TVPA, as there are no allegations of a threat of serious harm made knowingly by the Defendants "to compel a reasonable person of the same background *and in the same circumstances* [*as Plaintiff*] to continue performing labor in order to avoid incurring that harm." *Id.* (emphasis added). Although the threat of deportation may support a claim for forced labor (*see Aguirre v. Best Care Agency, Inc.*, 961 F. Supp. 2d 427, 444 (E.D.N.Y. 2013), it is not enough to rise to the level of a violation the TVPA under *these* circumstances. Indeed, courts must draw a distinction between labor compelled through threats of serious harm and threats of "exceedingly negative consequences." *See Walia v. Veritas Healthcare Solutions, LLC*, 13-cv-6935, 2015 U.S. Dist. LEXIS 10529, at *11-12 (S.D.N.Y. Aug. 11, 2015) (quoting *United States v. Shakney*, 222 F.2d 475, 486-82 (2d Cir. 1964) ("While a credible threat of deportation may come close to the line, it still leaves the employee

with a choice, and we do not see how we could fairly bring it within § 1584 without encompassing other types of threat…whose inclusion would make the statute an easy tool for blackmail and other serious abuse.")); *see also Headley v. Church of Scientology Int'l*, 687 F.3d 1173, 1180 (9th Cir. 2012) (acknowledging that courts "must distinguish between improper threats or coercion and permissible warnings of adverse but legitimate consequences").

In the context of *this Plaintiff*, though, the allegation that Defendant's threatened to "send her back to the Philippines" is insufficient to support a plausible claim for relief under the TVPA. Plaintiff concedes that she had possession of her Qatar Residence Permit, that she was "relieved" to travel to the United States, and, in order to do so, had obtained a three-month, temporary B1/B2 business and tourist visa. *See* Cmplt. ¶¶ 14, 18; Balayev Decl. ¶¶ 10, 11. Plaintiff does not allege that anyone but her had her passport. Plaintiff also acknowledges that she had a brother in Qatar, who had once already procured a visa and plane ticket for her to travel from the Philippines to Qatar in search of work. *Id.* ¶ 10. In addition, Plaintiff had access to her cellular phone, the internet and applications to reach her family and the public, such as Facebook Messenger and WhatsApp, as well as cash and a return ticket to Qatar already paid for by Defendants. *See* Cmplt. ¶¶ 11, 28, 35, 36; Balayev Decl. ¶¶ 13. Plaintiff therefore knew that she could not be "deported" or "sent back" to the Philippines by Defendants if she left Defendants' employ, but rather, that she could return to Qatar to her brother and seek other employment.

Also deficient in the pleading is the fact that Plaintiff does not allege with any specificity where the supposed threats were ever made, and gives no context as to whether they were made in order to induce or coerce her to continue her employment and done so by the Defendants with the intent to keep her employed. *See* Cmplt. ¶ 30. This is significant because the TVPA has specific scienter requirements, and the complaint does not allege any concrete facts from which one could

even infer that the Defendants acted "knowingly" or "willfully" to induce or coerce Plaintiff to continue her employment. The most that can be inferred from Plaintiff's allegations is a threat of an "exceedingly negative consequence"—*i.e.*, and end to her employment and a voluntary return to Qatar if she so chose, which she partially did. That is far from the threat of serious harm our courts have recognized as plausible violations of the TVPA.

Plaintiff has attempted to cast her claims for breach of contract and unpaid wages and overtime as involuntary servitude and human trafficking, but the allegations do not fit the claims. Where the allegations in the pleading are "fanciful," "fantastic" or "delusional," the court must dismiss the claims as "factually frivolous." *See Walia*, 2015 U.S. Dist. LEXIS 105429, at *12 (acknowledging that plaintiff's allegations of the defendant's threats to terminate his H-1B visa and withhold wages, standing alone, "do not rise to the level of violating Section 1584," and even with additional allegations of other threats and mental torture "toe the line of being sufficiently 'fanciful' or 'fantastic' to dismiss") (quoting *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011)). Plaintiff's claims under the TVPA do not withstand scrutiny when compared with other, contradictory allegations in the complaint, and the documentary evidence referred to therein, and her attempt to cast the pleading as one that falls squarely within the TVPA is unavailing. As such, Plaintiffs claims under the TVPA must be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that this Court issue and Order quashing the affidavits of service or, in the alternative, referring the matter to a traverse hearing, and dismissing Plaintiff's First through Sixth Claims for Relief for violations of the TVPA, and for such other and further relief the Court deems just, fair and equitable.

Dated: New York, New York
      September 21, 2018

McLAUGHLIN & STERN, LLP


By:    */s/ Jonathan R. Jeremias*
       Steven J. Hyman
       Jonathan R. Jeremias
       260 Madison Avenue
       New York, New York 10016
       T. (212) 448-1100
       F. (212) 448-0066
       shyman@mclaughlinstern.com
       jjeremias@mclaughlinstern.com

*Attorneys for Defendants*
*Oksana Kamenetskaya and*
*Bahruz Balayev*