# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| JEANIE PEREZ MASANGCAY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:18-cv-03666 (BMC) |
| | ) | |
| v. | ) | |
| | ) | |
| OKSANA KAMENETSKAYA and BAHRUZ BALAYEV, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Weronika Bukowski
Linda H. Martin
Cathelynn Tio
Emmeline Chen
FRESHFIELDS BRUCKHAUS DERINGER US LLP
601 Lexington Avenue, 31st Floor
New York, NY 10022
(212) 284-4936

Adriene Holder, *Attorney-in-Charge, Civil Practice*
Karen Cacace, *Director, Employment Law Unit*
Heidi Cain, *Staff Attorney, Employment Law Unit*
THE LEGAL AID SOCIETY
199 Water Street, 3rd Floor
New York, New York 10038
Telephone: (212) 577-3300

*Attorneys for Plaintiff*

October 5, 2018

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................... 1

FACTUAL BACKGROUND ...................................................................................... 2

ARGUMENT ............................................................................................................... 4

    I.     Service was properly effectuated on Defendants .................................................. 4

          A.    Service was proper pursuant to the Federal Rules of Civil Procedure ........ 4

          B.    In the alternative, the Court should grant leave for Plaintiff to serve
               process on Defendants through alternative means, or for Plaintiff to file a
               motion for such alternative service ........................................................... 10

    II.    After accepting Plaintiff's allegations as true and drawing all reasonable
          inferences in Plaintiff's favor, the Court must deny Defendants' Motion to
          Dismiss Plaintiff's TVPRA claims. ................................................................. 13

          A.    Plaintiff has sufficiently pled a claim of involuntary servitude pursuant to
               18 U.S.C. §§ 1584, 1595 ......................................................................... 14

          B.    Plaintiff has sufficiently pled a claim of forced labor pursuant to 18 U.S.C.
               §§ 1589, 1595 ......................................................................................... 15

          C.    Plaintiff has sufficiently pled TVPA claims pursuant to 18 U.S.C. §§
               1590, 1593A, 1594(a),1594(b), 1595 ....................................................... 17

          D.    Defendants' remaining arguments are meritless. ...................................... 19

    III.   The Court should disregard Defendants' documentary evidence. ......................... 20

          A.    The documents Defendants have submitted are inadmissible hearsay. ...... 21

          B.    Additionally, the Court should disregard Exhibits A, C and D of the
               Balayev Declaration and Exhibit A of the Kamenetskaya Declaration as
               unreliable ................................................................................................. 21

CONCLUSION ......................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662, 678 (2009) ...................................................................................................13

*Chase Coll. Sch. Inc. v. Moniodes*,
  2016 NY Slip Op 32848(U) (Sup Ct. Nassau Cnty. 2016)......................................................9

*CSC Holdings, Inc. v. Fung*,
  349 F. Supp. 2d 613 (E.D.N.Y. 2004) .................................................................................10

*Cumberbatch v. Emstar Pizza, Inc.*,
  No. 13–cv–7170 (WFK)(RER), 2014 WL 5682513 (E.D.N.Y. Nov. 4, 2014)......................10

*D.R.I., Inc. v. Dennis*,
  No. 03 Civ. 10026(PKL), 2004 WL 1237511 (S.D.N.Y. Jun 3, 2004) ..................................11

*Deason v. Deason*,
  343 N.Y.S. 2d 276 (Sup. Ct. Albany Cnty. 1973) .................................................................11

*DeLuca v. Access IT Grp., Inc.*,
  695 F. Supp. 2d 54 (S.D.N.Y. 2010)......................................................................................4

*Disability Advocates, Inc. v. Paterson*,
  No. 03-CV-3209 (NGG)(MDG), 2009 WL 1312112 (E.D.N.Y. May 8, 2009)......................21

*Franco v. Diaz*,
  51 F. Supp. 3d 235 (E.D.N.Y. 2014) ..........................................................................13, 16, 18

*George v. NY City Health & Hosps. Corp.*,
  No. 09-CV-3833 (ENV) (JMA), 2012 US Dist. LEXIS 44125 (E.D.N.Y. Mar.
  23, 2012) ..............................................................................................................................9

*Gilmore v. First Boston Corp.*,
  No. 80 Civ. 3134 (HFW), 1982 WL 1897 (S.D.N.Y. Sep. 17, 1982) ...................................22

*GMA Accessories, Inc. v. BOP, LLC*,
  No. 07 Civ. 3219 (LTS)(DCF), 2008 US Dist LEXIS 26120 (S.D.N.Y. Mar.
  20, 2008) ..............................................................................................................................8

*Henderson v. United States*,
  517 U.S. 654 (1996)..............................................................................................................7

*Hogan v. Fischer*,
   738 F.3d 509 (2d Cir. 2013)...................................................................................3

*Howard v. Klynveld Peat Marwick Goerdeler,*
   977 F. Supp. 654 (S.D.N.Y. 1997), *aff'd*, 173 F.3d 844 (2d Cir. 1999) ...................................4

*Jaffe and Asher v. Van Brunt*,
   158 F.R.D. 278 (S.D.N.Y. 1994) .......................................................................6, 7

*Javier v. Beck*,
   No. 13-cv-2926, 2014 WL 3058456 (S.D.N.Y. July 3, 2014)..............................................16

*Khan v. Khan*,
   360 Fed. App'x 202 (2d Cir. 2010)......................................................................12

*Lagayan v. Odeh*,
   199 F. Supp. 3d 21 (D.D.C. 2016) ....................................................................14, 18

*Leab v. Streit*,
   584 F. Supp. 748 (S.D.N.Y. 1984) .....................................................................11

*Manliguez v. Joseph*,
   226 F. Supp. 2d 377 (E.D.N.Y. 2002) ..................................................................14

*Meyer v. Jinkosolar Holdings Co. Ltd.*,
   761 F.3d 245 (2d Cir. 2014)............................................................................3

*Nat'l Dev. Co. v. Triad Holding Corp.*,
   930 F. 2d 253 (2d Cir. 1991)...........................................................................5

*Nolan v. Cuomo*,
   No. 11 CV 5827, 2013 WL 168674 (E.D.N.Y. Jan. 16, 2013)..............................................10

*Old Republic Ins. Co. v. Pacific Fin. Servs. of Am., Inc.*,
   301 F.3d 54 (2d Cir. 2002).............................................................................4

*Overseas Private Inv. Corp. v. Furman*,
   No. 10 Civ. 7096(RJS), 2012 U.S. Dist. LEXIS 39617 (S.D.N.Y. Mar. 14,
   2012) .................................................................................................7

*Paguirigan v. Prompt Nursing Emp't Agency*,
   286 F. Supp. 3d 430 (E.D.N.Y. 2017) .........................................................16, 18, 19, 20

*Philip Morris USA, Inc. v. Veles Ltd.*,
   No. 06 CV 2988(GBD), 2007 WL 725412 (S.D.N.Y. Mar. 12, 2007)....................................12

*Rana v. Islam*,
   305 F.R.D. 53 (S.D.N.Y. 2015) .......................................................................4, 9

*Romandette v. Weetabix Co.,*
807 F.2d 309 (2d. Cir. 1986)..........................................................................................4

*RSM Prod. Corp. v. Fridman,*
No. 06 Civ. 11512(DLC), 2007 WL 2295907 (S.D.N.Y. Aug. 10, 2007)..............................12

*Sajimi v. City of New York*
No. 07 CV 3252, 2011 WL 135004 (E.D.N.Y. Jan. 13, 2011)..............................................10

*Saraswat v. Jayaraman,*
No. 15-cv-4680 (PKC) (LB), 2016 WL 5408115 (E.D.N.Y. Sept. 28, 2016)............15, 16, 20

*Sartor v. Utica Taxi Ctr., Inc.,*
260 F. Supp. 2d 670 (S.D.N.Y.2003)..............................................................................7

*Sassower v. City of White Plains,*
No. 89 Civ. 1267 (MJL), 1993 WL 378862 (S.D.N.Y. Sept. 24, 1993)..................................4

*S.E.C. v. Nnebe,*
No. 01 Civ. 5247(KMW)KNF, 2003 WL 402377 (S.D.N.Y. Feb. 21, 2003) .........................11

*S.E.C. v. Sal,*
910 F.2d 1028 (2d Cir. 1990).........................................................................................12

*Sherpa v. Holder,*
393 Fed. App'x (2d Cir. 2010)........................................................................................22

*Stein v. World-Wide Plumbing Supply Inc.,*
71 F. Supp. 3d 320 (S.D.N.Y. 2014)...............................................................................19

*Swarna v. Al-Awadi,*
No. 06 Civ. 4880(PKC), 2007 WL 2815605 (S.D.N.Y. Sept. 20, 2007), *aff'd,*
622 F.3d 123 (2d Cir. 2010)...........................................................................................11

*Tishman v. Assoc. Press,*
No. 05 Civ. 4278(GEL), 2006 WL 288369 (S.D.N.Y. Feb. 6, 2006)....................................11

*United States v. Johnson,*
No. CV-00-1834 (BMC)(VVP), 2015 U.S. Dist. LEXIS 111849 (E.D.N.Y.
July 29, 2015)................................................................................................................5

*United States v. Kozminski,*
487 U.S. 931 (1988)......................................................................................................14

*United States v. Mellon,*
719 Fed. App'x 74 (2d Cir. Jan. 2018) ............................................................................6

*United States v. Tin Yat Chin*,
  371 F.3d 31 (2d Cir. 2004)..........................................................................................21

*Walia v. Veritas Healthcare Sols., L.L.C.*,
  No. 13 Civ. 6935 (KPF), 2015 WL 4743542 (S.D.N.Y. Aug. 11, 2015) ...................16, 17, 18

*Yong Gui Zheng v. Holder*,
  543 Fed. App'x 84 (2d Cir. 2013).............................................................................22

**Statutes**

18 U.S.C. § 1584 ................................................................................................. *passim*

18 U.S.C. § 1589 ................................................................................................. *passim*

18 U.S.C. § 1590 ................................................................................................. *passim*

18 U.S.C. § 1593A ...........................................................................................................18

18 U.S.C. § 1594 .........................................................................................................18, 19

18 U.S.C. § 1595 ................................................................................................. *passim*

N.Y.C.P.L.R. 308 ............................................................................................................10

**Other Authorities**

*Convention of 15 November 1965 on the Service Abroad of Judicial and
  Extrajudicial Documents in Civil or Commercial Matters*, Hague Conference
  on Private International Law,
  https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (last
  updated Apr. 11, 2018) ...............................................................................................10

Fed R. Civ. P. 4(e)(2)(B) ....................................................................................... *passim*

Fed. R. Civ. P. 4(f) .....................................................................................................10, 11

Fed. R. Civ. P. 4(m) .......................................................................................................12

Fed. R. Civ. P. Rule 12(b)(5) ........................................................................................4, 9

Fed. R. Civ. P. 12(b)(6) ........................................................................................13, 20, 21

Fed. R. Evid 801 ............................................................................................................21

Fed. R. Evid 802 ............................................................................................................21

Fed. R. Evid 803 ............................................................................................................21

Fed. R. Evid 804 .................................................................................................21

Fed. R. Evid 805 .................................................................................................21

Fed. R. Evid 807 .................................................................................................21

Fed. R. Evid 901(a) .............................................................................................21

H.R.  Rep. No. 106-939 (Oct. 5, 2000) ...............................................................15

Plaintiff Jeanie Perez Masangcay respectfully submits this Memorandum in Opposition to Defendants Oksana Kamenetskaya and Bahruz Balayev's (collectively, the "Defendants") Motion to Dismiss the Complaint (Dkt. No. 21).[1]  Defendants' Motion should be denied in its entirety.

## PRELIMINARY STATEMENT

Plaintiff is a hard-working Filipino mother who was lured to the U.S. and forced to endure traumatic working and living conditions during her employ by Defendants in the U.S.  In her Complaint, Ms. Masangcay alleges that not only was she forced to work 14-hour-days for little to no pay, she was denied any days off, denied sick leave, denied access to a working cellular phone, prohibited from leaving Defendants' house unaccompanied, constantly monitored, ordered to sleep in inadequate accommodations, subjected to berating and degrading treatment by Ms. Kamenetskaya, forced to perform humiliating nightly body massages on Ms. Kamenetskaya, and not provided with adequate food.  Because of the threat of being deported back to the Philippines and losing her ability to provide for her family, Ms. Masangcay suffered through Defendants' mistreatment until her escape on July 29, 2016.  This is exactly the kind of modern-day trafficking and worker exploitation that the Trafficking Victims Protection Act ("TVPA") is intended to address.

Defendants make two principal arguments for dismissal.  *First*, Defendants wrongly argue that the service effectuated upon the Defendants was improper.  *Second*, Defendants assert in conclusory fashion that Plaintiff's TVPA claims fail to plead any threat of serious harm.

Defendants' motion must be denied.  *First*, there was proper service of process here in accordance with Fed R. Civ. P. 4(e)(2)(B).  *Second*, after accepting Plaintiffs' allegations as true,

---

[1] Plaintiff refers to her Complaint, Dkt. No. 1, as the "Complaint" or "Compl.", and cites Defendants' Memorandum of Law in Support of their Motion to Dismiss (Dkt. No. 24) as the "Motion" or "Mot."  Capitalized terms not otherwise defined herein have the meaning assigned to them in the Complaint.

and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has sufficiently stated claims for relief pursuant to the TVPA. *Third*, the Court should disregard the exhibits attached to the declarations submitted by Defendants in support of their motion because it is improper to consider them in support of a motion to dismiss. Moreover, the documents submitted by Defendants are inadmissible and unreliable.

## FACTUAL BACKGROUND

### Service of Process

On July 14, 2018 Plaintiff served both Defendants in accordance with Fed R. Civ. P. 4(e)(2)(B) by leaving the Complaint and Summons of the above-referenced law suit with Svetlana Kamenetskaya, a person of suitable age and discretion residing at Defendants' dwelling, 6735 Yellowstone Blvd., Apt. 2A, Forest Hills, NY 11375 (the "Forest Hills home"). *See* Affidavit of Service Upon Oksana Kamenetskaya, dated July 17, 2018 (Dkt. No. 13); Affidavit upon Bahruz Balayev, dated July 19, 2018 (Dkt. No. 14) (collectively "Service Affs."). At the time of service, the process server believed that the woman who answered the door was Oksana Kamenetskaya as the person who answered the door verbally affirmed that she was Oksana Kamenetskaya. Amended Affidavit upon Oksana Kamenetskaya, dated August 24, 2018, ¶¶ 5-6 (Dkt. No. 19) ("Amended Kamenetskaya Service Aff."); Amended Affidavit upon Bahruz Balayev, dated August 24, 2018 (Dkt. No. 20) ("Amended Balayev Service Aff.") (collectively "Amended Affs."); Defendants subsequently appeared in this action by filing a letter dated August 23, 2018, in which they allege that it was Svetlana Kamenetskaya, not Oksana Kamenetskaya, who accepted service on July 14 on behalf of both Defendants. Plaintiff subsequently submitted amended Affidavits of Service to further clarify the events of July 14. *See* Amended Affs.

Service at the Forest Hills home is proper.   Through Plaintiff's own investigations, Plaintiff uncovered a significant amount of evidence sufficient for proper service on Defendants at the Forest Hills home.   Both Defendant Oksana Kamenetskaya and Bahruz Balayev, moreover, have represented that the Forest Hills home is their dwelling in numerous documents of public record that remain current and valid.

<u>Plaintiff's TVPA Claims</u>

Plaintiff has alleged the following facts to establish her TVPA claims.   Defendants sponsored Plaintiff's residence and employment in Qatar, Compl. ¶ 14, which gave them complete control over Plaintiff's employment prospects in that country.   In 2016, Defendants lured Plaintiff to the U.S. with false promises of better working conditions and pay.  *Id.* ¶¶ 15-20. While in the U.S., Defendants forced Plaintiff to accede to their demands by regularly threatening to send Plaintiff back to the Philippines, where Plaintiff would have no means of supporting her family.   Compl. ¶¶ 14, 30, 48.   Defendants forced Plaintiff to work 14-hour days, not including the overnight care that Plaintiff was required to provide to Defendants' child, without any days off or any sick leave.   *Id.* ¶¶ 21-23, 29, 37.   Defendants emotionally and physically isolated Plaintiff from the outside world by closely monitoring her every movement, prohibiting her from leaving Defendants' house unaccompanied, never providing her with a key to their home, and denying her access to mobile phone service.   *Id.* ¶¶ 27-28.   Defendants further limited Plaintiff's ability to communicate with her family to Wi-Fi communications over Facebook Messenger.   *Id.* ¶¶ 23, 28.   Plaintiff suffered verbal and psychological abuse under the berating treatment of Ms. Kamenetskaya, to the extent that Plaintiff did not take bathroom breaks for fear of being scolded.   *Id.* ¶ 31.   Moreover, throughout her employment by Defendants,

- 3 -

Plaintiff was severely malnourished and was only permitted to eat meager amounts of noodles, bread, rice, and eggs. *Id.* ¶ 25.

## ARGUMENT

### I.     Service was properly effectuated on Defendants

Defendants all but ignore the standards governing motions under Fed. R. Civ. P. 12(b)(5). When a Defendant challenges service of process pursuant to Fed. R. Civ. P. 12(b)(5), "'the burden of proof is on the plaintiff to show the adequacy of service.'" *DeLuca v. Access IT Grp., Inc.*, 695 F. Supp. 2d 54, 64-65 (S.D.N.Y. 2010) (quoting *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 658 (S.D.N.Y. 1997), *aff'd*, 173 F.3d 844 (2d Cir. 1999)). Nevertheless,  it is well established that a process server's affidavit of service establishes a presumption that service is proper. *See Old Republic Ins. Co. v. Pacific Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57-58 (2d Cir. 2002); *Rana v. Islam*, 305 F.R.D. 53, 63 (S.D.N.Y. 2015) ("A process server's affidavit of service constitutes prima facie evidence of proper service pursuant to Rule 4(e) and section 308(2) of the C.P.L.R."). "A defendant's sworn denial of receipt of service, however, rebuts the presumption of proper service established by the process server's affidavit and necessitates an evidentiary hearing." *Old Republic*, 301 F.3d at 57. "However, a bare allegation by a defendant that he was improperly served cannot be allowed to bely the private process server's return." *Sassower v. City of White Plains*, No. 89 Civ. 1267 (MJL), 1993 WL 378862, at *7 (S.D.N.Y. Sept. 24, 1993) (internal quotation marks omitted).  Defendants' arguments are insufficient to rebut the presumption of proper service as demonstrated by the affidavits submitted by Plaintiff in this action.

### A.     Service was proper pursuant to the Federal Rules of Civil Procedure

Fed R. Civ. P. 4 is to be liberally construed to "further the purpose of finding personal jurisdiction in cases in which the party has received actual notice." *Rana v. Islam*, 305 F.R.D. 53,

65 (S.D.N.Y. 2015) (quoting *Romandette v. Weetabix Co.*, 807 F.2d 309, 311 (2d. Cir. 1986)). Here, there is sufficient evidence to establish that service upon the Defendants was reasonably calculated to provide notice to Defendants and did in fact do so.

1.   <u>Defendants were served properly pursuant to Fed. R. Civ. P. 4(e)(2)(B)</u>

On July 14, 2018 Plaintiff served both Defendants in accordance with Fed R. Civ. P. 4(e)(2)(B) by leaving the Complaint and Summons of the above-referenced law suit with Svetlana Kamenetskaya.  *See* Service Affs.  Fed R. Civ. P. 4(e)(2)(B) provides that service of process is validly made by leaving a copy of the summons and complaint at an individual's "dwelling or usual place of abode with someone of suitable age and discretion who resides there."  Defendants concede that Svetlana Kamenetskaya is a resident of the Forest Hills home, Mot. p. 5, and therefore was able to accept service on behalf of the Defendants.  *United States v. Johnson*, No. CV-00-1834(BMC)(VVP), 2015 U.S. Dist. LEXIS 111849, at *5-6 (E.D.N.Y. July 29, 2015).  Further, Defendants do not contest that she is a person of "suitable age and discretion."[2]

2.   <u>Numerous indicia of permanence establish that the Forest Hills home is Defendants' dwelling.</u>

Pursuant to controlling case law and research into publically available information regarding Defendants, there is sufficient evidence to properly serve Defendants at the Forest Hills home.  Defendants, however, argue that service at the Forest Hills home is not proper because it is not their "dwelling or place of abode" under Fed. R. Civ. P 4(e)(2)(B) based on the largely unsupported claim that Defendants permanently moved out of the country and ignoring the substantial evidence that Plaintiff has submitted.  As Defendants concede in their motion to dismiss, however, an individual "can have two or more 'dwelling houses or usual places of

---

[2] At the time of service, the process agent believed the person who was present in the Forest Hills home was Oksana Kamenetskaya.  Amended Kamenetskaya Service Aff. ¶¶ 5-6; Amended Balayev Service Aff. ¶¶ 5-6.

abode,' provided each contains a sufficient indicia of permanence." *Nat'l Dev. Co. v. Triad Holding Corp.*, 930 F. 2d 253, 257 (2d Cir. 1991).

Here, the weight of case law shows that service is proper given the several indicia of permanence linking Defendants to the Forest Hills home. *See, e.g.*, *United States v. Mellon*, 719 Fed. App'x 74 (2d Cir. 2018) (Summary Order); *Jaffe and Asher v. Van Brunt*, 158 F.R.D. 278, 280 (S.D.N.Y. 1994). First, as Defendants concede, Mot. p. 5, Defendants are the owners of the Forest Hills home. But this is far from all. Defendants continue to accept mail at the Forest Hills home, despite their allegations that they have no intention to return. *See* Affidavit of Harlin Parker, dated October 4, 2018 ("Parker Aff."), ¶ 3.

Moreover, both Defendants hold themselves out as residents of New York state, and more specifically, residents of the Forest Hills home, in a variety of ways. Defendant Oksana Kamenetskaya is currently registered as a speech pathologist (license number 020300) in Forest Hills,[3] has an active voter registration listing the Forest Hills home, and possesses a valid New York State driver's license listing the Forest Hills home. Parker Aff. ¶¶ 4-6. Defendant Bahruz Balayev also has a New York state driver's license listing the Forest Hills home as his address. Parker Aff. ¶ 4. Simply put, it is not credible that two individuals with no intent to return to New York, after allegedly moving away years ago, continue to maintain these contacts with the state, and more specifically, with the Forest Hills home.

Even when service is made while the Defendants in question are not staying at the address at the time of service, such indicia of permanence as noted above are sufficient to show service was "reasonably calculated to provide [the defendant] with actual notice of the action" and therefore proper. *Jaffe*, 158 F.R.D. at 280; *Mellon*, 719 Fed. App'x, at *77-78 (finding

---

[3] A specific street address can only be obtained from the New York State Office of Professions pursuant to a "so ordered" subpoena. *See* Parker Aff. ¶ 6.

service was proper when service was upon defendant's spouse at an apartment that defendant owned, accepted mail at, and declaration were submitted by defendants' brother-in-law that he primarily lives in Europe).

                3.     <u>Defendants are estopped from arguing that the Forest Hills home is not their dwelling.</u>

Defendants' numerous representations, especially to governmental entities, of the Forest Hills home as their dwelling estops them from arguing otherwise.  *Jaffe*, 158 F.R.D. at 280 ("[E]ven if 4 William Street were not one of [defendant's] 'usual places of abode,' his numerous representations that that location was his address estop him from challenging service there."); *see also Overseas Private Inv. Corp. v. Furman*, No. 10 Civ. 7096(RJS), 2012 U.S. Dist. LEXIS 39617, at *19 (S.D.N.Y. Mar. 14, 2012) ("[Defendant] does not support his mother's conclusory statements with any statements of his own, or with any more detailed factual representations that could overcome Plaintiff's showing or explain why Plaintiff was not entitled to rely on the address provided by [Defendant]when he executed the Guaranty"); *cf. Sartor v. Utica Taxi Ctr., Inc.*, 260 F. Supp. 2d 670, 678 (S.D.N.Y.2003) (noting that "[t]he record contains substantial evidence establishing that Toussaint held out 465 Utica Avenue as his actual place of business for the purpose of correspondence and other activities related to his taxi operations" and, "[h]aving induced reliance on those representations, he is estopped from denying the propriety of that address for the purpose of service of process").  Similarly here, Defendants have represented in a number of public records that the Forest Hills home is their current dwelling.

Finally, it is important to note that "the core function of service is to supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objection." *Henderson v. United States*, 517

U.S. 654, 672 (1996).  It is clear the service upon the Forest Hills Home was in fact "reasonably calculated" to provide Defendants of notice of this action, and it has in fact done just so.

>4.   <u>Defendants arguments that service was not proper are of no avail.</u>

Defendants unartfully allege that, despite a significant amount of evidence to the contrary,  that service was not proper because the Forest Hills home is not their dwelling and they do not intend to return.  Mot., pp. 5-6.  To support this assertion, Defendants provide documents that are unreliable—redacted purported copies of their respective Qatar Residence Permits, and a copy of a single page purportedly from Oksana Kamenetskaya's passport containing stamps well outside of the period at hand.

The unreliable documents provided do not counter the several indicia of permanence that Plaintiff has uncovered through public sources and through her investigation.  Parker Aff. ¶¶ 3-6.  Additionally, as discussed below, there are numerous evidentiary issues with Defendants' submissions and they therefore should not be considered.  *Infra*, pp. 20-22.

Moreover, there is a blaring silence in Defendant's submissions.  While Defendants' assert that they have not returned to the United States, they have not provided evidence of this despite the ease of doing so.  A single page selectively chosen from a passport does not support these assertions.  *See* Declaration of Oksana Kamenetskaya in Support of Motion to Dismiss, dated September 21, 2018 (Dkt. No. 23) ("Kamenetskaya Decl.") Ex. B (Dkt. No. 23-2).  In addition, the travel itinerary Defendants have submitted to support the proposition that Defendants were in Azerbaijan does not include any reference to Mr. Balayev.  Kamenetskaya Decl. Ex. C (Dkt. No. 23-3).

Finally, Defendants' arguments that the service effectuated on Defendants is insufficient and relies on cases that are clearly distinguishable from the facts in this proceeding.  Mot. pp. 6-

12.  *GMA Accessories, Inc. v BOP, LLC* is not determinative because that decision relied on a single indication of permanence: that the premises were leased by the defendant.  2008 US Dist LEXIS 26120, at *6 (S.D.N.Y. Mar. 20, 2008).  Here, however, as discussed above, there are numerous indicia of permanence.  Similarly, in *Chase Coll. Sch. Inc. v Moniodes*, the only evidence set forth by the plaintiff that the location served was the "dwelling or abode" of the defendant was that defendant owned 20% of the residence at issue.  No. 6000907/14, 2016 NY Slip Op 32848[U] (Sup Ct. Nassau Cnty. 2016).  Here, it is uncontested that defendants own 100% of the Forest Hills home.  Mot. p, 5.  Further, *George v NY City Health & Hosps. Corp.*, is not applicable because, unlike the situation here, no complaint was served along with the summons. 2012 US Dist. LEXIS 44125, at *8 (E.D.N.Y. Mar. 23, 2012).

> 5.  <u>Even if the Court finds that the requirements of Fed. R. Civ. P. 4(e)(2)(B) were not met, the Court should not grant Defendants' Motion to Dismiss.</u>

This Court should deny Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(5) even if the Court disagrees that the requirements of Fed. R. Civ. P. 4(e)(2)(B) were met.  *Rana v. Islam*, 305 F.R.D. 53, 65 (S.D.N.Y. 2015) (emphasis in original) (internal citation and quotation marks omitted).  In *Rana*, even though service was held as improper[4], the court denied defendants' motion to dismiss for improper service because (i) defendants received actual notice of the lawsuit, and (ii) proper service could still be obtained either through an internationally agreed means of service or through an alternative means ordered by the court but not prohibited by international agreement.  *Id.*  Similarly here, Defendants have received actual notice, and if required, proper service could be obtained by other means.

---

[4] Unlike here, the Defendants in *Rana* never owned or leased their apartment where service was attempted.  *Id.*

**B.      In the alternative, the Court should grant leave for Plaintiff to serve process on Defendants through alternative means, or for Plaintiff to file a motion for such alternative service**

Should the Court be so inclined, Plaintiff requests that the Court grant Plaintiff leave to serve process on Defendants by leaving a copy of the Summons and Complaint with Defendants' relative, Svetlana Kamenetskaya, mailing the papers to Defendants' U.S. counsel, and emailing the papers to an email address associated with the Defendants pursuant to Fed. R. Civ. P. 4(f), or to file a motion for alternative service (which Plaintiff is prepared to file expediently).

Several courts have allowed plaintiffs to correct service in similar circumstances.  In *Cumberbatch v. Emstar Pizza, Inc.,* No. 13-cv-7170(WFK)(RER), 2014 WL 5682513, at *5 (E.D.N.Y. Nov. 4, 2014), upon which Defendants rely, this Court allowed Plaintiffs to re-serve process when the complaint was mailed to the wrong address pursuant to nail and mail service under N.Y.C.P.L.R. 308(2).  *See also Nolan v. Cuomo*, No. 11 CV 5827, 2013 U.S. Dist. LEXIS 6680, 2013 WL 168674, at *7 (E.D.N.Y. Jan. 16, 2013) (quoting *Sajimi v. City of New York* No. 07 CV 3252, 2011 WL 135004, at *3 (E.D.N.Y. Jan. 13, 2011)).  Further, in *CSC Holdings, Inc. v. Fung*, 349 F. Supp. 2d 613, 618-19 (E.D.N.Y. 2004), upon which the Defendant also relies, rather than dismissing the case, the court held a traverse hearing.  Plaintiff would not object to a traverse hearing should the Court find one necessary.

Should the court find that alternative service is warranted Plaintiff respectfully requests that, due to anticipated hardships, the Court allow the Plaintiff to serve process upon Defendants by leaving a copy of the Complaint and Summons at the residence of Oksana Kamenetskaya's parents. *See* Parker Aff.¶¶ 8-12.  Significantly, Qatar—one of the purported residences of Defendants—is not a party to the Hague Convention.  *Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, Hague Conference                on              Private             International                 Law,

- 10 -

https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (last updated Apr. 11, 2018). Effecting personal service on Defendants in Qatar would require tremendous efforts and expense to effect service consistent with Qatari law pursuant to Fed.R.Civ.P. 4(f)(2). *See* Parker Aff.¶¶ 8-12.

Plaintiff's proposed method of serving process through Defendants' relatives, coupled with mailing the Defendants' U.S. counsel and emailing copies to the Defendants, more than satisfies the requirements of procedural due process. "It is beyond dispute that service of the summons by mailing to the addresses of a defendant's relatives, satisfies the demands of procedural due process in cases, like this one, where a plaintiff has demonstrated that he or she has exhausted all reasonable possibilities of serving the summons personally." *Deason v. Deason*, 343 N.Y.S.2d 276, 279 (Sup. Ct. Albany Cnty. 1973). Courts frequently approve alternative service to the home of a defendant's relative. *E.g.*, *S.E.C. v. Nnebe*, No. 01 Civ. 5247(KMW)KNF, 2003 WL 402377, at *4-5 (ordering service by delivery to the homes of a defendant's brother and sister and by publication); *Leab v. Streit*, 584 F. Supp. 748, 763 (S.D.N.Y. 1984) (ordering service by delivery to defendant's parents' home and grandmother's home, as well as his attorney). Svetlana Kamenetskaya is the mother of Defendant Oksana Kamenetskaya and mother-in-law of Defendant Bahruz Balayev. As Defendants' notice of this suit has already shown, Svetlana Kamenetskaya is in contact with the Defendants, and service upon Svetlana Kamenetskaya is reasonably calculated to inform Defendants of this action. Svetlana Kamenetskaya also indicated to our process server that she would be able to provide the documents in question to Defendant Balayev. Amended Affs.

Courts have additionally found that service to Defendants' U.S. counsel is suitable alternative service in similar circumstances. *Swarna v. Al-Awadi*, No. 06 Civ. 4880(PKC), 2007

WL 2815605, at *2 (S.D.N.Y. Sept. 20, 2007), *aff'd*, 622 F.3d 123 (2d Cir. 2010) (granting motion of alternative service to be sent to defendant's Paris residence and to defendant's lawyer's address in New York); *RSM Prod. Corp. v. Fridman*, No. 06 Civ. 11512(DLC), 2007 WL 2295907, at *1 (S.D.N.Y. Aug. 10, 2007) (granting plaintiffs permission to effect service through hand delivery of the relevant documents to defendant's U.S. counsel); *see also S.E.C. v. Unifund Sal*, 910 F.2d 1028 (2d Cir. 1990) (upholding substituted service on the foreign defendant through ordinary mail directed to the defendant as well as his attorneys in Canada and the United States.)

Finally, courts frequently authorize service by electronic mail, should the Court desire an additional means of providing alternative service. *E.g.*, *D.R.I., Inc. v. Dennis*, No. 03 Civ. 10026 (PKL), 2004 WL 1237511, at *2; *Philip Morris USA, Inc. v. Veles Ltd.*, No. 06 CV 2988(GBD), 2007 WL 725412, at *2; *Tishman v. The Assoc. Press*, No. 05 Div. 4278(GEL), 2006 WL 288369, at *1 (S.D.N.Y. Feb. 6, 2006). Defendants' submissions include possible email addresses of both Defendants. *See* Declaration of Bahruz Balayev in Support of Motion to Dismiss, dated September 21, 2018 (Dkt. No. 22) ("Bahruz Decl."), Exs. E, H (Dkt. Nos. 22-5, 22-8). Emailing the Summons and Complaint to this address is a low-cost method of service that is reasonably likely to provide Defendants notice of this action.

In any event, if the Court requires it, Plaintiff should be given the opportunity to re-serve and provided with sufficient time to do so. There is no basis to dismiss the Complaint with prejudice. *See Khan v. Khan*, 360 Fed. App'x 202, 204 (2d Cir. 2010); Fed. R. Civ. P. 4(m) ("If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.")

II. **After accepting Plaintiff's allegations as true and drawing all reasonable inferences in Plaintiff's favor, the Court must deny Defendants' Motion to Dismiss Plaintiff's TVPRA claims.**

Defendants seek a sweeping dismissal of Plaintiff's TVPA claims based on the unsupported and conclusory assertion that Plaintiff has failed to allege that a threat of serious harm forced her to work for Defendants in the U.S.  In addition to failing to differentiate between the claims alleged, Defendants' mischaracterization of suffering as "meaningless" is neither supported by any authority nor warrants dismissal of any of Plaintiff's TVPA claims.

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court "must accept all factual allegations [in the complaint] as true and draw all reasonable inferences in favor of plaintiff."  *Meyer v. Jinkosolar Holdings Co. Ltd.*, 761 F.3d 245, 249 (2d Cir. 2014). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A claim is "plausible" if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

At the outset, the Court must disregard the evidence that Defendants improperly attempt to introduce at the dismissal stage.  The Court "may consider only the factual allegations contained in the pleadings, documents attached to the pleadings or incorporated by reference, documents a plaintiff knew of and relied on in drafting the complaint, and matters of public record of which judicial notice may be taken."  *Franco v. Diaz*, 51 F. Supp. 3d 235, 246 (E.D.N.Y. 2014).  The only exhibit that the Court may potentially consider when ruling on Defendants' 12(b)(6) motion is Exhibit F, Dkt. No. 22-6, which appears to be a copy of the employment contract referred to in Paragraph 19 of the Complaint, and that Defendants never provided to Plaintiff.

A.      **Plaintiff has sufficiently pled a claim of involuntary servitude pursuant to 18 U.S.C. §§ 1584, 1595.**

Pursuant to 18 U.S.C. §§ 1584 and 1595, Plaintiff may sue "[w]hoever knowingly and willfully holds to involuntary servitude . . . any other person for any term, or brings within the United States any person so held." "Involuntary servitude" includes "a condition of servitude in which the victim is forced to work for the defendant by the . . . threat of coercion through law or the legal process." *United States v. Kozminski*, 487 U.S. 931, 952 (1988). "The vulnerabilities of the victim are relevant in determining whether the . . . legal coercion or threats thereof could plausibly have compelled the victim to serve." *Id.* at 952. To survive a motion to dismiss, Plaintiff need only plead that (1) Defendants held Plaintiff in involuntary servitude; (2) that Defendants acted knowingly or willfully; (3) and that their actions were a necessary cause of Plaintiff's decision to continue working for them. *See id.* at 936.

Plaintiff has sufficiently alleged facts to establish that Defendants knowingly and willfully forced Plaintiff to work for them by threat of coercion through legal process. Specifically, Plaintiff has alleged that Defendants withheld her Qatar ID from her and regularly threatened to deport her back to the Philippines. *See Id.* at 948 (stating that threatening "an immigrant with deportation could constitute the threat of legal coercion."). She has also alleged that such coercion was compounded by the fact that Defendants forced her to work 14-hour days, without any days off, and for little to no pay; forced her to care for their child overnight; cut her off emotionally and physically from the outside world—all while Plaintiff was severely malnourished due to Defendants' harsh food restrictions. Courts facing similar factual allegations have concluded that such circumstances are sufficient to state a claim of involuntary servitude pursuant to Section 1584. *See Lagayan v. Odeh*, 199 F. Supp. 3d 21, 28 (D.D.C. 2016); *see also Manliguez v. Joseph*, 226 F. Supp. 2d 377, 384-85 (E.D.N.Y. 2002).

- 14 -

**B.**    **Plaintiff has sufficiently pled a claim of forced labor pursuant to 18 U.S.C. §§ 1589, 1595.**

Section 1589 of the TVPA is "intended to address increasingly subtle methods of traffickers who place their victims in in modern-day slavery, such as where traffickers . . . restrain their victims without physical violence or injury, or threaten dire consequences by means other than overt violence." *Saraswat v. Jayaraman*, No. 15-cv-4680 (PKC) (LB), 2016 WL 5408115, at *4 (E.D.N.Y. Sept. 28, 2016) (quoting H.R. Rep. No. 106-939, at 101 (Oct. 5, 2000)).  Pursuant to 18 U.S.C. § 1595, Plaintiff may bring a civil action against any person who violates Section 1589 of the TVPA.

Under Section 1589(a) of the TVPA, it is unlawful to "knowingly provide[] or obtain[] the labor or services of a person" using "serious harm or threats of serious harm," "the abuse or threatened abuse of law or legal price," or "any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person would suffer serious harm . . . ."  18 U.S.C. § 1589(a).  The TVPA defines "serious harm" as "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm."  18 U.S.C. § 1589(c)(2). "Abuse or threatened abuse of law or legal process" means "the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action."  18 U.S.C. § 1589(c)(1).

Plaintiff has alleged facts sufficient to establish that Defendants knowingly obtained her labor by threatening serious harm.  First, "it is well established that 'the threat of deportation

alone may support a claim for forced labor."  *Franco*, 51 F. Supp. 3d at 246-47; *see Saraswat*, 2016 WL 5408115 at *5 (concluding threat of deportation and losing work visa unless plaintiff paid $15,000 was sufficient); *Javier v. Beck*, No. 13-cv-2926, 2014 WL 3058456, at *6 (S.D.N.Y. July 3, 2014) (holding threat to enforce money judgment and threat to withdraw plaintiff's visa application was sufficient).  By alleging that Defendants regularly threatened to deport her to the Philippines if she did not comply with their demands, Compl. ¶¶ 30, 48, Plaintiff has sufficiently alleged that Defendants threatened her with serious harm.  Second, "[t]he threat of financial harm constitutes serious harm within the meaning of the TVPA." *Paguirigan v. Prompt Nursing Emp't Agency*, 286 F. Supp. 3d 430, 438 (E.D.N.Y. 2017). Plaintiff's allegations that Defendants threatened to deprive her of the ability to provide for her family, Compl. ¶¶ 30, 48, imposes a "severe financial burden" on Plaintiff that is sufficient to establish serious harm pursuant to Section 1589.  *Paguirigan*, 286 F. Supp. 3d at 438.

Plaintiff has also alleged sufficient facts to establish that Defendants knowingly obtained her labor by abusing legal process and through a scheme intended to cause Plaintiff to believe that non-performance would result in serious harm to Plaintiff.  As alleged in the Complaint, Defendants lured Plaintiff to the U.S. by procuring and presenting fraudulent documents to the U.S. Embassy to obtain Ms. Masangcay's visa to travel and work in the U.S. for Defendants. Compl. ¶¶ 15-20, 49-50.  After arriving in the U.S. and realizing that Defendants had no intention of keeping their promises, Plaintiff was forced to work and live under appalling conditions, while suffering extreme mistreatment by Defendants, because she believed that non-performance would result in Defendants sending her back to the Philippines.  Compl. ¶¶ 21-31.

Defendants' reliance on *Walia v. Veritas Healthcare Sols., L.L.C.*, No. 13 Civ. 6935 (KPF), 2015 WL 4743542 (S.D.N.Y. Aug. 11, 2015), to argue that the harm alleged by Plaintiff

is insufficiently "serious" under the TVPA flounders for several reasons.  In *Walia*, the Court distinguished between the pleading requirements of a Section 1584 claim of involuntary servitude as compared to a Section 1589 of forced labor.  With respect to Section 1584, the Court opined that a threat to withhold wages and terminate a visa alone, *without more*, did not rise to the level of involuntary servitude under Section 1584.  *Id.* at *4.  There, however, the Court denied the motion to dismiss plaintiff's Section 1584 claim because the plaintiff was "threatened," "mentally tortured," and "stalked under constant threat of his life."  *Id.*  The facts alleged by Plaintiff are analogous here: in addition to threats of deportation, Plaintiff was subjected to psychological, emotional and verbal abuse; severely cut off from the outside world; kept under constant surveillance by Defendants; physically overworked; regularly forced to perform humiliating body massages on Ms. Kamenetskaya, and malnourished.  Compl. ¶¶ 21-31.  More significantly, the Court in *Walia* held that the threat of deportation is sufficient to state a claim of forced labor pursuant to Section 1589 and denied a motion to dismiss that claim on those grounds.  *Id.*

### C.    Plaintiff has sufficiently pled TVPA claims pursuant to 18 U.S.C. §§ 1590, 1593A, 1594(a),1594(b), 1595.

Pursuant to 18 U.S.C. §§ 1595 and 1590(a), Plaintiff may sue any person who "knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter."  Plaintiff has sufficiently pled a Section 1590 trafficking claim by combining the alleged violations of Section 1584 or Section 1589 with the following additional allegations: that Plaintiff was recruited by Defendants in Qatar to work in the U.S., that Defendants and Plaintiff signed a contract for her employment in the U.S., that Defendants helped Plaintiff obtain her visa, that she accompanied Defendants to travel to the U.S., and that Defendants provided Plaintiff with housing upon arriving in New York.  Compl. ¶¶ 15-22, 24.

*See Franco*, 51 F. Supp. 3d at 247 (finding Section 1590 claim sufficiently pled where plaintiff alleged "that she was recruited by defendants to work in the [U.S.], with their arranging for her visa, paying her expenses, and providing her with housing after her arrival" and combining with alleged Section 1589 violations); *see also Paguirigan*, 286 F. Supp. 3d at 439; *Lagayan*, 199 F. Supp. 3d at 29-30 *Walia*, 2015 WL 4743542, at *5.

Additionally, Plaintiff has the right to sue any person who "knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in any act in violation of section . . . 1595(a), knowing or in reckless disregard of the fact that the venture has engaged in such violation" pursuant to 18 U.S.C. §§ 1593A and 1595.  Because Plaintiff has sufficiently pled predicate TVPA offenses pursuant to Sections 1584, 1589, and 1590, Plaintiff has sufficiently pled a Section 1593A claim.  *Lagayan*, 199 F. Supp. 3d at 29. Defendants have not moved to dismiss this claim on any other grounds.

Plaintiff has adequately pled claims of attempt to violate Sections 1584, 1589, and 1590 of the TVPA pursuant to 18 U.S.C. §§ 1594(a) & 1595 and claims of conspiracy to violate Sections 1589 and 1590 pursuant to 18 U.S.C. §§ 1594(b) & 1595 against the Defendants. "Whoever attempts to violate section . . . 1584 . . . 1589, 1590 . . . shall be punishable in the same manner as a completed violation of that section."  18 U.S.C. § 1594(a).  Additionally, "[w]hoever conspires with another to violate section 1589 . . . 1590 . . . shall be punished in the same manner as a completed violation of such section."  18 U.S.C. § 1594(b).

Plaintiff has sufficiently alleged attempted violation of Section 1584 (involuntary servitude), 1589 (forced labor), and 1590 (trafficking) because she has sufficiently pled Section 1584, 1589, and 1590 claims as set forth above.  *See Paguirigan*, 286 F. Supp. 3d at 439.  The multiple demands and actions taken by Defendants in luring Plaintiff to the U.S., forcing her to

work for them, and restricting her liberties more than sufficiently establish the requisite intent and overt acts needed to properly state an attempted violation of the prohibitions against involuntary servitude, forced labor, and trafficking.  *See Stein v. World-Wide Plumbing Supply Inc.*, 71 F. Supp. 3d 320, 330 (S.D.N.Y. 2014).

Similarly, Plaintiff has sufficiently pled a claim of conspiracy to violate Sections 1589 (forced labor) and 1590 (trafficking) against the Defendants.  "For there to be a conspiracy, there must be an agreement to violate the prohibition on forced labor [or trafficking]."  *Paguirigan*, 286 F. Supp. 3d at 440.  "Plaintiff does not need to plead the existence of an explicit agreement, but does need to allege facts that plausibly show that the defendants 'entered into a joint enterprise with consciousness of its general nature and extent.'"  *Id.*  Section 1594(b), moreover, has no overt act requirement.  *Id.* at 440 n.6.  Here, Plaintiff alleges that Defendants agreed to obtain plaintiff's labor in the U.S. in violation of Section 1589's prohibition against forced labor and in violation of Section 1590's prohibition against labor trafficking.   Compl. ¶ 71.  As discussed above, Plaintiff has sufficiently pled claims for forced labor and trafficking; those allegations, coupled with the allegations that Defendants have a child together, shared a home in Qatar, traveled together to the U.S., and lived and traveled together while in the U.S. (Compl. ¶¶ 11, 12, 15-19, 21-22, 32-34) all plausibly show that Defendants closely monitored Plaintiff and knowingly agreed to subject Plaintiff to working and living conditions in violation of the TVPA.

**D.   Defendants' remaining arguments are meritless.**

Without citing to any case law, or identifying the specific TVPA claim at issue, Defendants assert that the Complaint fails to satisfy unspecified "specific scienter requirements" of the TVPA.   This baseless assertion is meritless.   Plaintiff has adequately alleged that Defendants knowingly forced her to work for them in the U.S. by luring her to the U.S. with false promises, isolating her in their home away from outside people, refusing her access to

- 19 -

cellular phone service, closely monitoring Plaintiff's whereabouts, severely restricting Plaintiff's food supply, and regularly threatening to deport Plaintiff to the Philippines.  Compl. ¶¶ 15-20, 25, 27-28, 30, 41, 47-51, 56, 61, and 66.

Defendants' attempts to characterize Plaintiff as free to return to Qatar, and Qatar as a land of liberty and opportunity, are similarly unavailing.  The Complaint alleges facts establishing that Defendants were in complete control of Plaintiff's work and residence in Qatar: Defendants sponsored Plaintiff's employment and residence there, Compl. ¶ 14, had the power to deport Plaintiff back to the Philippines, and credibly threatened to do so.

Additionally, Plaintiff's allegations that she had Wi-Fi access through her cell phone and a paltry amount of cash are not determinative factors in the TVPA analysis.  "The TVPA does not require that plaintiffs be kept under 'literal lock and key.'"  *Paguirigan*, 286 F. Supp. 3d 430 (E.D.N.Y. 2017) (rejecting defendants' argument that forced labor claim was absurd because plaintiff could freely leave her employment and had her own residence and phone); *see also Saraswat*, 2016 WL 5408115, at *6.

## III.    The Court should disregard Defendants' documentary evidence.

For the purposes of Defendants' 12(b)(6) motion, consideration of the documents submitted by Defendants, other than potentially Exhibit F, is improper at the dismissal stage and should therefore be disregarded.  *See supra* p. 13.[5]

Even if it were appropriate to consider such documents at this stage, pursuant to Your Honor's Individual Rule B(2) requiring all submissions made in support of a motion to be in compliance with the Federal Rules of Evidence and be made in admissible form, the Court

---

[5] Plaintiff reserves the right to object to the admissibility, relevance, and weight of these documents at a later stage in the litigation, and after the benefit of discovery.

should disregard the exhibits attached to the declarations submitted in support of Defendants' Motion to Dismiss as inadmissible for the independent reasons set forth below.[6]

### A.      The documents Defendants have submitted are inadmissible hearsay.

All of the documents Defendants rely upon are inadmissible hearsay.  *See* FED. R. EVID. 802.  Hearsay is a statement that (1) "the declarant does not make while testifying at the current trial or hearing"; and (2) "a party offers in evidence to prove the truth of the matter asserted in the statement."  FED. R. EVID. 801. All of the documents attached to the Balayev and Kamenetskaya Declarations have been submitted to prove the truth of the very subject matter of those documents (presumably to support Defendants' position with respect to service of process, or to improperly support Defendants' position with respect to their 12(b)(6) motion).  *See Disability Advocates, Inc. v. Paterson*, No. 03-CV-3209 (NGG)(MDG), 2009 WL 1312112, at *3 (E.D.N.Y. May 8, 2009).  None of the hearsay exceptions apply here, and the Court should disregard these documents for the purposes of this Motion.  FED. R. EVID. 803-805, 807.

### B.      Additionally, the Court should disregard Exhibits A, C and D of the Balayev Declaration and Exhibit A of the Kamenetskaya Declaration as unreliable.

Defendants failed to properly authenticate the documents attached to its motion papers. "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  FED. R. EVID. 901(a).  A showing of authenticity is sufficient if "a reasonable juror could find in favor of authenticity or identification."  *United States v. Tin Yat Chin*, 371 F.3d 31, 38 (2d Cir. 2004).

---

[6] These exhibits include Docket Nos. 22-1 (Exhibit A of the Balayev Declaration), 22-2 (Exhibit B of the Balayev Declaration), 22-3 (Exhibit C of the Balayev Declaration), 22-4 (Exhibit D of the Balayev Declaration), 22-5 (Exhibit E of the Balayev Declaration), 22-6 (Exhibit F of the Balayev Declaration), 22-7 (Exhibit G of the Balayev Declaration), 22-8 (Exhibit H of the Balayev Declaration), 23-1 (Exhibit A of the Kamenetskaya Declaration), 23-2 (Exhibit B of the Kamenetskaya Declaration), and 23-3 (Exhibit C of the Kamenetskaya Declaration).

The Defendants have failed to properly authenticate the Western Union check that was allegedly paid by Svetlana Kamenetskaya.  Balayev Decl. Ex. D (Dkt. No. 22-4); *Yong Gui Zheng v. Holder*, 543 Fed. App'x. 84, 85 (2d Cir. 2013) (Summary Order) (describing an unauthenticated statement as "unreliable" and upholding Board of Immigration Appeal's decision to not give weight to the evidence); *Sherpa v. Holder*, 393 Fed. App'x 819 (2d Cir. 2010) (rejecting "unauthenticated and unreliable affidavits").  While Mr. Balayev asserts that this is a "true and correct" copy of wire transfer, by his own admission, he was not in the United States and would not have knowledge of such a payment or the authenticity of this document.  Even though "[a] party could also satisfy the authentication requirement if the document's form and content, taken with other circumstances, indicate that the document is reliable," no such efforts have been made here.  *Id.* It is unclear where this document was obtained, whether the copied transaction receipt at the bottom of the document is at all related to the other information shown, and what the purpose of this wire transfer was.  *See Gilmore v. First Boston Corp.*, No. 80 Civ. 3134 (HFW), 1982 WL 1897, at *3 (S.D.N.Y. Sep. 17, 1982) ("[A]lthough plaintiff relies on Exhibit B, that document is wholly unauthenticated  and unreliable.").  For the same reasons, Defendants have failed to properly authenticate the National Grid bill, Balayev Decl. Ex. C (Dkt. No. 22-3).

The Court should also disregard as unreliable the Qatar residency permits and driver's licenses, as well the single page purportedly from Ms. Kamenetskaya's passport, relied upon by Defendants.[7]  These documents contain redacted portions or have been excerpted, and it is unclear whether relevant information has been redacted or excluded, and whether the redactions

---

[7] Defendants' decision to selectively only show a single page from a passport and failing to include the identifying cover page raise questions of credibility as well.  *See* FED. R. EVID. 106.

and exclusions have been made for a proper purpose.  *See* Balayev Decl. Ex. A (Dkt. No. 22-1);

Kamenetskaya Decl. Exs. A, B (Dkt. Nos. 23-1, 23-2).

## **CONCLUSION**

Based on the foregoing reasons, Plaintiff respectfully requests that the Court deny

Defendants' Motion to Dismiss.


Dated: <u>October 5, 2018</u>               Respectfully submitted,
      New York, NY

                                          <u>/s/ Weronika Bukowski</u>
                                          Weronika Bukowski
                                          Linda H. Martin
                                          Cathelynn Tio
                                          Emmeline Chen
                                          FRESHFIELDS BRUCKHAUS DERINGER US LLP
                                          601 Lexington Avenue, 31st Floor
                                          New York, NY 10022
                                          Tel: (212) 284-4936
                                          linda.martin@freshfields.com
                                          cathelynn.tio@freshfields.com
                                          weronika.bukowski@freshfields.com
                                          emmeline.chen@freshfields.com

                                          Adriene Holder, *Attorney-in-Charge, Civil Practice*
                                          Karen Cacace, *Director, Employment Law Unit*
                                          Heidi Cain, *Staff Attorney, Employment Law Unit*
                                          The Legal Aid Society
                                          199 Water Street, 3rd Floor
                                          New York, New York 10038
                                          Telephone: (212) 577-3300

                                          *Attorneys for Plaintiffs*