UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JEANIE PEREZ MASANGCAY,

                          *Plaintiff*,

    -*v.*-

OKSANA KAMENETSKAYA and
BAHRUZ BALAYEV,

                          *Defendants*.

1:18-cv-03666 (BMC)

# REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FRCP 12(B)(5) AND 12(B)(6) BY DEFENDANTS OKSANA KAMENETSKAYA AND BAHRUZ BALAYEV

**MCLAUGHLIN & STERN, LLP**
Steven J. Hyman, Esq.
Jonathan R. Jeremias, Esq.
260 Madison Avenue
New York, New York 10016
T. (212) 448-1100
F. (212) 448-0066
shyman@mclaughlinstern.com
jjeremias@mclaughlinstern.com

*Attorneys for Defendants*
*Oksana Kamenetskaya and*
*Bahruz Balayev*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ i

PRELIMINARY STATEMENT ........................................................................................................ 1

ARGUMENT ..................................................................................................................................... 2

    I.     THE COMPLAINT MUST BE DISMISSED PURSUANT TO FRCP 12(b)(5)
         FOR INSUFFICIENT SERVICE OF PROCESS ................................................... 2

         A.     Plaintiff Has Not Effectuated Proper Service Upon Defendants ................. 2

         B.     The Court Cannot Relieve Plaintiff of Improper Service ........................... 5

    II.    PLAINTIFF FAILS TO STATE CLAIMS UNDER THE TVPA
         WARRANTING DISMISSAL PURSUANT TO FRCP 12(b)(6) .......................... 7

CONCLUSION ................................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*Altos Hornos De Mex., S.A.B. de C.V. v. Rock Res., Ltd.*,
    15-cv-1671, 2015 U.S. Dist. LEXIS 144339 (S.D.N.Y. Oct. 19, 2015) ............................. 7

*Cumberbatch v. Emstar Pizza, Inc.*,
    13-cv-7170, 2014 U.S. Dist. LEXIS 156119 (E.D.N.Y. Oct. 16, 2014) ........................... 2

*Dev. Specialists, Inc. v. Li (In re Coudert Bros. LLP)*,
    16-CV-8237, 2017 U.S. Dist. LEXIS 71435 (S.D.N.Y. May 10, 2017) ........................... 6

*George v. New York City Health & Hosps. Corp.*,
    09-CV-3833, 2012 U.S. Dist. LEXIS 44125 (E.D.N.Y. Mar. 23, 202) .............................. 3

*Headley v. Church of Scientology Int'l*,
    687 F.3d 1173 (9th Cir. 2012) ......................................................................................... 8

*Hogan v. Fischer*,
    738 F.3d 509 (2d Cir. 2013) ............................................................................................. 7

*National Dev. Co. v. Triad Holding Corp.*,
    930 F.2d 253 (2d Cir. 1991) ............................................................................................. 5

*Old Republic Ins. Co. v. Pac. Fin. Srvcs. Of Am., Inc.*,
    301 F.3d 54 (2d Cir. 2002) ............................................................................................... 3

*Paguirigan v. Prompt Nursing Emp't Agency*,
    286 F. Supp. 3d 430 (E.D.N.Y. 2017) .............................................................................. 9

*S. Bay Sailing Ctr., Inc. v. Std. Fire Ins. Co.*,
    15-CV-6183, 2017 U.S. Dist. LEXIS 7166 (E.D.N.Y. Jan. 17, 2014) ............................. 5

*Saraswat v. Jayaraman*,
    15-CV-4680, 2016 U.S. Dist. LEXIS 133573 (E.D.N.Y. Sept. 28, 2018) ........................ 9

*United States v. Machat*,
    08-CV-7936, 2009 U.S. Dist. LEXIS 87000 (S.D.N.Y. Sept. 21, 2009) .......................... 6

*United States v. Pluta*,
    176 F.3d 43 (2d Cir. 1999) ............................................................................................... 4

*United States v. Shakney*,
    222 F.2d 475 (2d Cir. 1964) ............................................................................................. 8

*Walia v. Veritas Healthcare Solutions, LLC*,
    13-cv-6935, 2015 U.S. Dist. LEXIS 10529 (S.D.N.Y. Aug. 11, 2015) .............................. 7

**Rules**

Fᴇᴅ. R. Eᴠɪᴅ. 902 ........................................................................................................................ 4

Case 1:18-cv-03666-BMC   Document 28   Filed 10/12/18   Page 4 of 14 PageID #: 171

**PRELIMINARY STATEMENT**

Plaintiff Jeanie Perez Masangcay ("Plaintiff") was at all times aware that Defendants Oksana Kamenetskaya and Bahruz Balayev ("Defendants") were permanent residents of Qatar and that there exists a procedure in accordance with our Federal Rules of Civil Procedure ("FRCP") for service of process upon individuals located in a foreign county. However, Plaintiff, having had two years since the date of the events which gave rise to her claims to commence this action, decided that the proper procedure was simply too "difficult, burdensome and…time consuming," and instead chose to serve the wrong individuals at a place she knew neither of the Defendants use as their "dwelling or usual place of abode" in accordance with FRCP 4(e)(2)(B).

Plaintiff also concedes in her opposition that proper service could have been obtained by other means—*i.e.*, service upon Defendants in Qatar—but now asks this Court to excuse her decision of convenience over sufficient process, regardless of its jurisdictional implications, in order to save her specious claims that Defendants violated the Trafficking Victims Protection Act ("TVPA"). Our Courts have made clear that actual notice does not excuse defective service, and that Plaintiff should not be permitted alternative means of service until she has attempted to serve Defendants properly in Qatar. Thus, the complaint should be dismissed pursuant to FRCP 12(b)(5).

In addition, Plaintiff's arguments in opposition to Defendants' motion to dismiss the TVPA claims pursuant to FRCP 12(b)(6) only serve to underscore the reason dismissal is warranted. Plaintiff does not rely on any factual matter alleged in the complaint because the complaint is devoid of any such material that would reasonably support her claims. Rather, Plaintiff relies on exaggerated characterizations of conclusory statements in an effort to fit allegations of wage and overtime violations into claims of violations of the TVPA. For these reasons, the Court must dismiss the TVPA claims.

**ARGUMENT**

I. **THE COMPLAINT MUST BE DISMISSED PURSUANT TO FRCP 12(b)(5) FOR INSUFFICIENT SERVICE OF PROCESS**

  A. *Plaintiff Has Not Effectuated Proper Service Upon Defendants*

  In determining this motion to dismiss, the Court must ultimately decide whether the Defendants actually reside, and intend to reside, at the place where service was made. *See* Defs.' Br. pp. 10-12. None of Plaintiff's arguments in opposition to this motion address that issue. Instead, Plaintiff relies on so-called "indicia of permanence" that our Courts have already rejected as insufficient evidence that individuals actually live, or intend to live, at the place where service was made. *See e.g.*, *Cumberbatch v. Emstar Pizza, Inc.*, 13-cv-7170, 2014 U.S. Dist. LEXIS 156119, at *8-9 (E.D.N.Y. Oct. 16, 2014) (finding that the defendant's address on his New York State drivers license was insufficient proof that he "actually lives there"). Therefore, the complaint must be dismissed pursuant to FRCP 12(b)(5) or, in the alternative, an evidentiary hearing must be held to determine whether service of process was proper.

  As a preliminary matter, contrary to Plaintiff's assertion that "Defendants all but ignore the standards governing motions under [FRCP] 12(b)(5)," both parties are in agreement that: (i) the burden is on Plaintiff to show the adequacy of service; (ii) a process server's affidavit of service may establish a presumption that service was proper; and (iii) a defendant's sworn denial of receipt of service rebuts the presumption of proper service established by the process server's affidavit, and necessitates an evidentiary hearing. *See* Pltf.'s Br. p. 4; *see also* Defs.' Br. p. 7.

  In this instance, however, the process server's affidavits hardly support a presumption that service was proper. *First*, the affidavits of service are facially defective insofar as they contain false statements of fact. *See* Defs.' Br. p. 9. Ms. Kamenetskaya was never served personally with the summons and complaint, as she was travelling in Azerbaijan on July 14, 2018. Declaration of

2

Oksana Kamenetskaya, dated September 21, 2018 ("Kamenetskaya Decl.") at ¶¶ 7, Exs. B, C; *cf.* Dkt. Nos. 13, 14.[1] Therefore, the affidavits of service that purport to have delivered the summons and complaint to Defendants by serving them upon Ms. Kamenetskaya fail to carry a presumption of adequate service, and Plaintiff completely overlooks this deficiency.[2]

*Second*, even if the Court were to overlook the deficiency in the process server's affidavits of service and assume that the affidavits, standing alone, create a presumption of adequate service at the Defendants' "dwelling or usual place of abode," Defendants have sufficiently rebutted the presumption, thus necessitating an evidentiary hearing as to whether service was, in fact, proper. *See* Defs.' Br. pp. 5-6, 9-12; *see also George v. New York City Health & Hosps. Corp.*, 09-CV-3833, 2012 U.S. Dist. LEXIS 44125, at *4 (E.D.N.Y. Mar. 23, 202) (citing *Old Republic Ins. Co. v. Pac. Fin. Srvcs. Of Am., Inc.*, 301 F.3d 54, 57-58 (2d Cir. 2002) ("Where factual questions arise as to the propriety of service, a traverse hearing must be held to determine if service was, in fact, proper."). Defendants submitted sworn statements and admissible proof that they are permanent residents of Qatar, that while they own the Forest Hills Apartment it has been leased to Ms. Kamenetskaya's parents since July 28, 2016 through July 27, 2019, that they do not maintain a room or property at the residence, and that, since they returned to Qatar in September 2016, they have not once been to the Forest Hills Apartment and have no present intention to return there. *Id.*;

---

[1] In the moving papers, Defendants' counsel inadvertently referred to the affidavits of service by their "PageID#" (*i.e.*, as "51" and "52") overlooking the docket number assigned, which should have been Dkt. Nos "13" and "14" respectively.

[2] Plaintiff also fails to grasp the import of the visa stamp in Ms. Kamenetskaya's passport, which was introduced solely to demonstrate that she could not have been personally served on the date the process server alleged to have delivered the commencement papers to her. *See* Defs.' Br. p. 9.

*see also* Declaration of Bahruz Balayev, dated September 21, 2018 ("Balayev Decl.") ¶¶ 3-9; Kamenetskaya Decl. ¶¶ 2-6.[3]

In response to Defendants' sworn statements and documentary evidence, Plaintiff relies solely on "research into publically available information regarding Defendants" (Pltf.'s Br. p. 5), none of which demonstrate that Defendants actually reside, or presently intend to reside, at the Forest Hills Apartment. That is, Plaintiff relies on the address listed on: (a) an "Abstract of Driving Record" from the New York State Department of Motor Vehicles, which does not provide information as to when their licenses bearing the Forest Hills Apartment address was issued; (b) Ms. Kamenetskaya's voter registration record from the Board of Elections in the City of New York, which also does not provide information as to when Ms. Kamenetskaya registered to vote using the Forest Hills Apartment address; and (c) her speech pathology license registration from the New York State Department of Education's Office of Professions, which, again, also does not provide a date when Ms. Kamenetskaya registered her speech pathology license using the Forest Hills Apartment address. *See* Affidavit of Harlan Parker, dated October 4, 2018 ["Parker Affid."] at Exs. B, C, D.

The breadth of caselaw analyzing whether there exists sufficient indicia of permanence such that a particular place should be considered an individual's "dwelling or usual place of abode" has concluded that there must be some indication that the individual actually resides or intends to reside there, and that licensing records are inadequate to support such a finding or on their own lack indicia of permanence. *See* Defs.' Br. pp. 10-12. Nothing in the records relied upon by

---

[3] Plaintiff's argument that Defendants have not submitted admissible proof to rebut the presumption of the process server's affidavits is patently wrong. Defendants' statements and government issued residence cards, as well as the lease agreement, are all in admissible form and authenticated by the proponents of those documents. *See United States v. Pluta*, 176 F.3d 43, 49-50 (2d Cir. 1999); FED. R. EVID. 902.

4

Plaintiff even remotely establish that, at the time service was attempted, Defendants actually resided, or intended to reside, at the Forest Hills Apartment. Indeed, the proof submitted by Defendants demonstrates that, far from being a second home accessible to them at any moment, the Forest Hills Apartment serves as merely an investment property at which other individuals have resided since it was purchased. *See* Defs.' Br. pp. 5-6, 10-12. Plaintiff's records only corroborate the undisputed fact that Defendants own the Forest Hills Apartment. But, again, ownership is not a sufficient indicia of permanence. *See id.* p. 10.

Based on the foregoing, the Court should dismiss the complaint pursuant to FRCP 12(b)(5) or, in the alternative, conduct an evidentiary hearing to determine whether service was, in fact, proper.

### B. The Court Cannot Relieve Plaintiff of Improper Service

Plaintiff all but concedes that service of process may have been insufficient and, upon such a finding by this Court, seeks to overlook that deficiency in favor of a finding that Defendants received "actual notice" of the lawsuit such that personal jurisdiction should be established. *See* Pltf.'s Br. p. 9. However, Plaintiff's argument ignores the fact that the Second Circuit has "reject[ed] the notion that 'actual notice' suffices to cure a void service." *National Dev. Co. v. Triad Holding Corp.*, 930 F.2d 253, 256 (2d Cir. 1991) (internal quotations and citations omitted). Thus, without proper service upon Defendants, the Court cannot exercise personal jurisdiction over them merely because they did receive notice of the lawsuit. *See S. Bay Sailing Ctr., Inc. v. Std. Fire Ins. Co.*, 15-CV-6183, 2017 U.S. Dist. LEXIS 7166, at *19 (E.D.N.Y. Jan. 17, 2014).

In the alternative, Plaintiff asks that the Court permit her leave to serve Defendants by alternative means pursuant to FRCP 4(f)(3). Pltf.'s Br. pp. 10-12. Plaintiff has already had two years from the events giving rise to her claims to commence this action and, while aware that

Defendants are residents of Qatar, admits that there exists a proper and viable procedure for service upon Defendants in Qatar pursuant to FRCP 4(f)(2). *See* Pltf.'s Br. pp. 10-11; Parker Affid. ¶ 8. Plaintiff has, however, undertaken no efforts to properly serve Defendants in accordance with FRCP 4(f)(2).

Plaintiff's request to be relieved from having to effectuate proper service and for permission to serve Defendants by alternative means, including service upon Ms. Kamenetskaya's mother nunc pro tunc, is inappropriate in opposition to this motion and, in any event, Plaintiff cannot demonstrate why an order of alternative service would be necessary. *See Dev. Specialists, Inc. v. Li (In re Coudert Bros. LLP)*, 16-CV-8237, 2017 U.S. Dist. LEXIS 71435, at *38-39 (S.D.N.Y. May 10, 2017) (citing *United States v. Machat*, 08-CV-7936, 2009 U.S. Dist. LEXIS 87000, at *4 (S.D.N.Y. Sept. 21, 2009) ("Declaring prior service effective nunc pro tunc is not appropriate because Rule 4(f)(3) requires that the means of service be ordered by the [c]ourt and the [plaintiff's] prior ineffectual efforts were not done pursuant to [c]ourt order.").

"[C]ourts in the Second Circuit have frequently required parties attempting to effectuate service pursuant to Rule 4(f)(3) to offer (1) a showing that the plaintiff has *reasonably attempted* to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is *necessary*." *Id.* (emphasis added) (internal quotations and citations omitted). Here, Plaintiff has failed to demonstrate both that she (1) reasonably attempted to effectuate service, and (2) that this Court's intervention is necessary, in part, because she concedes that service upon Defendants in Qatar is *possible*, ant yet, made no effort to effectuate service there. *See* Parker Affid. ¶ 8.

Accordingly, Plaintiff should not be permitted leave to move for an order for alternative service pursuant to FRCP 4(f)(3) until she has exhausted efforts to properly serve Defendants in

6

Qatar. *See id.* at *39 (denying request for alternative service under Rule 4(f)(3) because "there is no evidence that [p]laintiff has attempted service…in a form sanctioned by Rules 4(f)(1) or 4(f)(2)) (citing *Altos Hornos De Mex., S.A.B. de C.V. v. Rock Res., Ltd.*, 15-cv-1671, 2015 U.S. Dist. LEXIS 144339, at *3 (S.D.N.Y. Oct. 19, 2015) (finding that the "availability of [service under prescribed methods] bears on the issue of whether alternative means of service are warranted")).

## II. PLAINTIFF FAILS TO STATE CLAIMS UNDER THE TVPA WARRANTING DISMISSAL PURSUANT TO FRCP 12(b)(6)

In opposition to Defendants' motion to dismiss the TVPA claims pursuant to FRCP 12(b)(6), Plaintiff fails to specifically identify any factual averments alleged in her complaint that would plausibly support claims of violations of the TVPA. The absence of specific and plausible factual averments is fatal to Plaintiff's ability to sustain her TVPA claims, and those claims must, therefore, be dismissed.

Plaintiff admits that "a complaint must contain *sufficient* factual matter…to state a claim to relief that is *plausible on its face*," in order to survive a motion to dismiss. Pltf.'s Br. p. 13 (citing *Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013) (internal quotations and citations omitted)) (emphasis added). However, as set forth in Defendants' moving papers, Plaintiff's TVPA claims are unsupported by sufficient factual matter to state a claim to relief that is plausible on its face.

The TVPA was enacted to protect individuals from being knowingly coerced into performing labor or services for others, or to continue to perform labor or services for others, by acts or threats of "serious harm". *See* Defs.' Br. pp. 13-14. Courts must draw a distinction, though, between labor compelled through threats of "serious harm" and threats of "exceedingly negative consequences." *See Walia v. Veritas Healthcare Solutions, LLC*, 13-cv-6935, 2015 U.S. Dist. LEXIS 10529, at *11-12 (S.D.N.Y. Aug. 11, 2015) (quoting *United States v. Shakney*, 222 F.2d

7

475, 486-82 (2d Cir. 1964) ("While a credible threat of deportation may come close to the line, it still leaves the employee with a choice, and we do not see how we could fairly bring it within § 1584 without encompassing other types of threat…whose inclusion would make the statute an easy tool for blackmail and other serious abuse.")); *see also Headley v. Church of Scientology Int'l*, 687 F.3d 1173, 1180 (9th Cir. 2012) (acknowledging that courts "must distinguish between improper threats or coercion and permissible warnings of adverse but legitimate consequences").

In the context of her TVPA claims, Plaintiff has not alleged any specific facts of serious harm or threats of serious harm that plausibly establish a claim that she was coerced to perform labor or services for the Defendant. Plaintiff instead relies heavily on the vague and conclusory allegation that Defendants threatened her with deportation to the Philippines. As already established by Defendants, that threat was meaningless in the context of *this* Plaintiff because at all relevant times she had possession of her passport, B1/B2 visa (which would have permitted her to stay in the United States after leaving Defendants employ for purposes of her tourist visa), plane ticket to Qatar, and a Qatar resident ID. *See* Defs.' Br. pp. 15-17.[4]

Moreover, while our Courts have held that threats of deportation *may* support a claim under the TVPA, those Courts have done so only where threats of deportation are compounded by additional, concrete factual allegations of coercion through threats of physical, financial, or mental harm, which Plaintiff does not allege here. This is underscored by the cases relied upon by Plaintiff in opposing Defendant's motion. *See e.g.*, Pltf.'s Br. pp. 15-17. For example, Plaintiff relies on a series of cases where the plaintiff was threatened with monetary fines for leaving the defendant's employ. *See Saraswat v. Jayaraman*, 15-CV-4680, 2016 U.S. Dist. LEXIS 133573 (E.D.N.Y.

---

[4] Plaintiff alleges in her opposition for the first time that Defendants withheld her Qatar ID, which is nowhere substantiated by the pleadings. *See* Pltfs. Br. p. 14. In fact, contradicting Plaintiff's argument is the allegation in her complaint that she was given her Qatar ID. *See* Complaint ¶ 14.

8

Sept. 28, 2018). In *Saraswat*, the court found that the plaintiff had pled a claim under 18 U.S.C. § 1989 when the defendant threatened not only deportation, but also that the defendant had confiscated plaintiff's work visa and would have to pay defendant $15,000 if he left. Plaintiff also relies on *Paguirigan v. Prompt Nursing Emp't Agency*, 286 F. Supp. 3d 430, 438 (E.D.N.Y. 2017) for her argument that she has sufficiently alleged a threat of financial harm. However, in *Paguirigan*, like *Saraswat*, the plaintiffs were threatened with an "Indentured Servitude Penalty" of $25,000 if they left the defendant's employ. *See* 286 F. Supp. 3d at 435.

Here, Plaintiff does not allege any such threat of serious financial harm. Instead, Plaintiff argues that she believed she had to continue to work under the threat of being "depriv[ed]…of the ability to provide for her family." Pltf.'s Br. p. 16, Cmplt. ¶¶ 30, 48. If such a belief could form the basis of a TVPA claim, then any employment would constitute a threat of financial harm since to quit working would risk depriving anyone of obtaining further financial means. Moreover, Plaintiff's own belief is not the same as a threat made by Defendants intended to coerce her to continue to work for Defendants. Plaintiff fails to allege any actual threat of financial harm that could plausibly state a cognizable claim under the TVPA.

Plaintiff also fails to allege any facts to support a claim that she was "lured" to the United States to work for Defendants against her will,[5] or that Defendants "knowingly obtained her labor…through a scheme intended to cause Plaintiff to believe that non-performance would result in serious harm.". *Cf.* Pltf.'s Br. p. 16. Again, all Plaintiff has alleged is that she was promised continued employment as a nanny in the United States, and was given a contract that set no

---

[5] In her opposition, Plaintiff argues that she was "recruited by Defendants in Qatar to work in the U.S." Pltf.'s Br. p. 17. This characterization, like all characterizations of what Plaintiff has actually alleged in her complaint, goes beyond the facts. Plaintiff has actually alleged that she was recruited in Qatar to work in Qatar by Defendants, and that, months later, Defendants asked her if she wanted to travel to the United States on vacation with them as their nanny. Cmplt. ¶¶ 10-15. Plaintiff agreed, and was "relieved" to travel there for work. *Id.* at ¶ 18.

9

minimum or maximum hours of work, and detailed all of the duties she was intended to, and actually did, perform. Plaintiff was free to stop working for Defendants and to remain in the United States for the term of her visa or return to Qatar (and to her brother) using her passport and plane ticket. Defs.' Br. p. 16. Plaintiff cannot, and should not, be permitted to trivialize the issues concerning the terms and conditions of her work as a nanny as a means of saying she was coerced and forced to endure unconscionable working conditions in violation of the TVPA.

Plaintiff's overall reliance on cases that are far from analogous to her own allegations is quite telling of her attempts to fit claims of wage and overtime violations into claims under the TVPA. Because Plaintiff has alleged no facts that plausibly support a claim for violations of the TVPA, those claims should be dismissed pursuant to FRCP 12(b)(6).

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court issue and Order quashing the affidavits of service or, in the alternative, referring the matter to a traverse hearing, and dismissing Plaintiff's First through Sixth Claims for Relief for violations of the TVPA, and for such other and further relief the Court deems just, fair and equitable.

Dated: New York, New York
October 12, 2018

                                        McLAUGHLIN & STERN, LLP

                                        By:    */s/ Jonathan R. Jeremias*
                                                   Steven J. Hyman
                                                   Jonathan R. Jeremias
                                                   260 Madison Avenue
                                                   New York, New York 10016
                                                   T. (212) 448-1100
                                                   F. (212) 448-0066
                                                   shyman@mclaughlinstern.com
                                                   jjeremias@mclaughlinstern.com

                                        *Attorneys for Defendants*
                                        *Oksana Kamenetskaya and*
                                        *Bahruz Balayev*